[No. A104782. First Dist., Div. Three. Aug. 16, 2004.]

In re JERRED H., a Person Coming Under the Juvenile Court Law.
JERRED H., Plaintiff and Appellant, v.
CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES
BUREAU, Defendant and Respondent.

■■■■■■
■■■■■■■■■

Counsel

Marin Williamson, under appointment by the Court of Appeal, for Plaintiff and Appellant.

Silvano B. Marches, County Counsel, and Steven P. Rettig, Deputy County Counsel, for Defendant and Respondent.

Opinion

**POLLAK, J.**—Jerred H. appeals from an order of the juvenile court denying his petition to revoke the court's prior order terminating parental rights, and from the denial of his oral motion to declare his stepfather to be his presumed father. The juvenile court summarily denied both requests on the ground that it lacked jurisdiction because the order terminating parental rights was final. Despite our sympathy over Jerred's predicament, with which the juvenile court was equally concerned, we are constrained to agree with its conclusion and therefore must affirm.

## Factual and Procedural Background

Jerred, now age 14, was declared a dependent child of the juvenile court on June 15, 2001, when the court sustained a juvenile dependency petition alleging that his mother had a history of substance abuse which impaired her ability to care for him. Jerred was removed from his mother's home and placed with his stepfather, Norman, who was separated from Jerred's mother. Jerred's six half-siblings for whom dependency petitions also had been sustained also were living with Norman, who was being provided family maintenance services through the Contra Costa County Children and Family Services Bureau (the bureau). At the 12-month review hearing on September 27, 2002, the court terminated reunification services for Jerred's mother and set a Welfare and Institutions Code[1] section 366.26 hearing to determine a permanent plan for Jerred.

In the social study report prepared for the section 366.26 hearing, the bureau recommended a permanent plan of long-term foster care. The social worker opined that Jerred was not adoptable and reported that Norman's referral for an adoptive home study was being closed. The social worker reported that "[Norman] is in need of continued support and services from Children and Family Services in order to provide the bare necessities including a clean home with sufficient food and a bed for each of the nine

---

[1] All statutory references are to the Welfare and Institutions Code.

children in his home." Nonetheless, at the section 366.26 hearing, Jerred and Norman requested that parental rights be terminated so that Jerred could be adopted by Norman. The court found that Jerred was adoptable and, on February 11, 2003, ordered termination of parental rights. No appeal was taken from this order.

In a report prepared for the initial adoption review, originally scheduled for August 5 but continued to October 7, 2003, it was reported that Jerred and his siblings had been removed from Norman's home. Norman had not completed the adoptive home study, and his house had been condemned due to hazardous, filthy, and uninhabitable conditions. The bureau subsequently changed its recommendation for Jerred's permanent plan from adoption to long-term foster care. Jerred agreed to the change in plan because he wanted to be considered for adoption only by Norman.

On October 22, 2003, Jerred filed a section 388 petition requesting that parental rights be reinstated. At the November 24 hearing on the petition, Jerred's counsel also requested that Norman be declared Jerred's presumed father. After apologizing to Jerred and assuring him that if there were anything it could do to find him a permanent home it would do so, the court denied both requests on the ground that, despite the equities, it lacked jurisdiction to modify the final termination order. Jerred filed a timely notice of appeal.

## Discussion

■ Section 366.26, subdivision (i), provides, "Any order of the court permanently terminating parental rights under this section shall be conclusive and binding upon the child, upon the parent or parents and upon all other persons who have been served with citation by publication or otherwise as provided in this chapter. After making the order, the court shall have no power to set aside, change, or modify it, but nothing in this section shall be construed to limit the right to appeal the order." Accordingly, a juvenile court lacks jurisdiction to modify or revoke an order terminating parental rights once it has become final. (*In re David H.* (1995) 33 Cal.App.4th 368, 385 [39 Cal.Rptr.2d 313]; *In re Ronald V.* (1993) 13 Cal.App.4th 1803, 1806–1807 [17 Cal.Rptr.2d 334].) In *David H.*, the court explained, "As a general matter, it would be inimical to the policies underlying the juvenile court law to allow parents to raise a collateral challenge to an order terminating parental rights on the ground that the child's posttermination placement did not meet with the parents' expectations. Such relief is not available, whether the parents' expectations were not met because of an uncontrollable turn of fate [citation] or for any other reason . . . ." (*David H.*, at p. 385.) In *Ronald V.*, the biological mother of the minor had acquiesced in the termination of her

parental rights on the understanding that herson would be adopted by a particular friend. When the friend died before the adoption had occurred she petitioned for a modification of the section 366.26 order, requesting that the permanency plan of adoption be changed to long-term foster care or guardianship and that she be granted de facto parent status. The court held that "[h]aving failed to appeal from the termination order, [the mother's] petition to modify the permanency planning order was in substance a collateral attack on the termination of her parental rights," which the court lacked jurisdiction to consider. (*Ronald V., supra,* at p. 1806.)

Jerred argues that his request to have Norman declared his presumed father is not a collateral attack on the termination order because the order did not terminate *Norman's* parental rights, but terminated only the rights of Jerred's mother and alleged father.[2] Jerred's position is understandable because the section 366.26 hearing unquestionably focused only on the rights of his mother and alleged father. Norman asserted no parental rights and no consideration was given to terminating any rights he might have; to the contrary, the expectation was that by terminating the parental rights of Jerred's mother and alleged father, Norman would be able to adopt Jerred. At the conclusion of the hearing, the trial court stated only that "[t]he court will terminate parental rights to parents," which conceivably could be understood to apply only to the biological mother and alleged father.

▮ Nonetheless, the section 366.26 order terminating parental rights cannot be interpreted in such a restricted manner. Parental rights are terminated to permit the minor to become free for adoption. (Cal. Rules of Court, rule 1463(g).) Termination may not be ordered unless the court finds by clear and convincing evidence that the minor is likely to be adopted. (§ 366.26, subd. (c)(1).) The termination of all parental rights, including those of an unknown father or of a person who at the time of the hearing is not asserting any parental rights, is necessary to accomplish this objective. "The rights of the mother, any presumed father, any alleged father, and any unknown father or fathers must be terminated in order to free the child for adoption." (Cal. Rules of Court, rule 1463(g).) ▮ For this reason, the statute requires that if there is any uncertainty concerning the identity of the parents, notice of the section 366.26 hearing be given to "all persons claiming to be the father or mother of the minor." (Former § 366.23, subd. (b)(5); now § 294, subd. (f)(8).) Consistent with the statute, notice of Jerred's section 366.26

---

[2] Although the denial of the modification petition is included in the notice of appeal, Jerred's briefs do not address this denial. The petition, which requested that the trial court revoke the prior termination order, is clearly without legal support. (See *In re Ronald V., supra,* 13 Cal.App.4th at pp. 1806–1807.)

hearing was given by publication to "father, mother, or all persons claiming to be the father or mother of said child," expressly advising that the court would be considering a permanency plan for Jerred, including possible termination of parental rights. Although not then claiming to be Jerred's presumed father, Norman, represented by counsel, was present at and participated in the section 366.26 hearing. Jerred too, with counsel, was present at the hearing. Although the judge made no verbal reference at the hearing to others who might later claim to have some form of parental rights with respect to Jerred, the written order signed by the judge terminates the parental rights of "the alleged natural father, and of any person claiming to be the father of the child."[3] Accordingly, the order terminating parental rights effectively extinguished Norman's right, and that of any other unknown person, to claim to be Jerred's father, presumed or otherwise. Neither Jerred nor Norman appealed from the order, which had become final when Jerred made his request and therefore was not subject to reconsideration. (*In re David H.*, *supra*, 33 Cal.App.4th 368, 385; *In re Ronald V.*, *supra*, 13 Cal.App.4th 1803, 1806–1807; *In re Heather B.* (2002) 98 Cal.App.4th 11, 15 [119 Cal.Rptr.2d 59].)

*In re Elise K.* (1982) 33 Cal.3d 138, 139 [187 Cal.Rptr. 483, 654 P.2d 253], is not to the contrary. In *Elise K.*, the court reversed an order terminating parental rights based on the parties' stipulation that events occurring after the order was entered undermined the juvenile court's finding of adoptability. In *In re Zeth S.* (2003) 31 Cal.4th 396, 413, footnote 11 [2 Cal.Rptr.3d 683, 73 P.3d 541], the court noted that "*Elise K.* therefore serves as precedent for the proposition that where postjudgment evidence stands to completely undermine the legal underpinnings of the juvenile court's judgment under review, and all parties recognize as much and express a willingness to stipulate to reversal of the juvenile court's judgment, an appellate court acts within its discretion in accepting such a stipulation and reversing the judgment." While the evidence of changed circumstances may have been grounds for a stipulated reversal on the direct appeal from the order terminating parental rights,

---

[3] Jerred contends that to the extent this written order conflicts with the court's oral pronouncement, the oral pronouncement should control. Jerred cites a criminal case that reiterates the well-established rule that the judge's oral pronouncement of a defendant's sentence controls over a conflicting sentence entered in the clerk's minutes. (*People v. Martinez* (1980) 109 Cal.App.3d 851, 855 [167 Cal.Rptr. 477].) This rule is inapplicable here. This is a dependency proceeding, not a criminal action in which the judge is required to orally pronounce judgment against the defendant. Entry of the judge's written order is not a ministerial act similar to the entry of a sentence in the clerk's minutes. (See *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 756, fn. 1 [270 Cal.Rptr. 326] [dependency court's written visitation order controls over potentially conflicting statements regarding visitation made during the hearing].)

nothing in *Elise K.* vests the trial court with authority to revoke on the same grounds an order that has already become final. (See *In re Heather B.*, *supra*, 98 Cal.App.4th at p. 15.)

Jerred argues that jurisdiction to consider the request to designate Norman as his presumed father is conferred by Family Code, section 7630, subdivision (b), which provides: "Any interested party may bring an action *at any time* for the purpose of determining the existence or nonexistence of the father and child relationship presumed under subdivision (d) of [Family Code] Section 7611." (Italics added.) However, interpreting this section to authorize proceedings to designate a presumed father after parental rights have been terminated under Welfare and Institutions Code, section 366.26 would undermine the finality of an order terminating parental rights, the importance of which our Supreme Court has emphatically recognized. (See *In re Zeth S.*, *supra*, 31 Cal.4th at pp. 410–414.) Indeed, if this argument were accepted, it would be possible to seek presumed father status even after a child has been adopted by another father. Family Code section 7630 must be understood to mean that proceedings under that section may be brought at any time before parental rights have been terminated under section 366.26.

We join the trial court and county counsel in observing the harshness of the result we reach. Because the court has no jurisdiction, the shared desire of the minor and of the aspiring presumed father must be frustrated despite the fact that the adoption that was anticipated at the time of the section 366.26 hearing is no longer likely, and regardless of whether granting the request would be in the minor's best interest.[4] In all likelihood, Jerred will be left a "legal orphan," despite the recognized disfavor of such status. (See *In re Jayson T.* (2002) 97 Cal.App.4th 75, 85–86 [118 Cal.Rptr.2d 228], overruled on other grounds in *In re Zeth S.*, *supra*, 31 Cal.4th at pp. 413–414 [2 Cal Cal.Rptr.3d 683, 73 P.3d 541]; *In re Albert B.* (1989) 215 Cal.App.3d 361, 374 [263 Cal.Rptr. 694].) To avoid such an unhappy consequence, legislation may be advisable authorizing judicial intervention under very limited circumstances following the termination of parental rights and prior to the completion of adoption. However, the wisdom of qualifying the present finality of a section 366.26 order in such a manner is for the Legislature to evaluate. Unless and until it does so, the courts must respect the present system.

---

[4] Perhaps unnecessarily, we emphasize that in view of the court's lack of jurisdiction, we do not consider whether recognizing Norman as Jerred's presumed father would in fact be in Jerred's best interest. We note only that both Jerred and Norman seek such recognition, that the likely consequence of denying Jerred's request is that he will have no father at all, and that our jurisdictional conclusion deprives the court of the power to recognize Norman's status whether or not doing so would be in Jerred's best interests.

## Disposition

The order denying Jerred's section 388 petition and his oral request to have Norman declared his presumed father is affirmed.

McGuiness, P. J., and Parrilli, J., concurred.

A petition for a rehearing was denied September 7, 2004, and appellant's petition for review by the Supreme Court was denied November 10, 2004.