[No. D050351. Fourth Dist., Div. One. July 27, 2007.]

In re CODY B., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
VINCENT V., Defendant and Respondent;
DEANNA C., Objector and Appellant;
CODY B., Appellant.

COUNSEL

Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Objector and Appellant.

Julie E. Braden, under appointment by the Court of Appeal, for Appellant and Minor.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Respondent.

John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

McCONNELL, P. J.—Deanna C.'s parental rights over her biological son, Cody B., were terminated in 2001 in a former dependency action. Cody was adopted by Vincent V., but Vincent allowed him to live at least part time with Deanna. At the jurisdictional and dispositional hearing in this action, the court removed Cody from Vincent's custody. Deanna and Cody appeal the order denying her request to have her designated his "presumed mother" on

the ground that under Welfare and Institutions Code[1] section 366.26, subdivision (i)(1), the motions were impermissible collateral attacks on the earlier judgment of termination. We agree with the court's assessment. The San Diego County Health and Human Services Agency (the Agency), however, concedes the order must be reversed for the limited purpose of ensuring compliance with the inquiry and notice provisions of the Indian Child Welfare Act of 1978 (the ICWA) (25 U.S.C. § 1901 et seq.).

## FACTUAL AND PROCEDURAL BACKGROUND

Deanna has a history of drug abuse. She has four children: Michael, now an adult; K., born in 1989; R., born in 1994; and Cody, born in 1993. In May 1997 the children were removed from Deanna's custody after they were found wandering the streets unsupervised and dirty, and her home was found unsuitable for children. Deanna was offered reunification services and the children were returned to her, but she was unable to comply and in August 1998 they were removed again. R. was eventually placed with Vincent, her biological father. In February 2001 the court terminated Deanna's parental rights to Cody, along with those of his biological father, and no appeal was taken. In 2002 Vincent adopted Cody and the court terminated its jurisdiction over the first dependency action.

Vincent nonetheless allowed Cody and R. to live with Deanna, at least sporadically. In September 2006 the children were living with Vincent when the Agency learned his home lacked proper plumbing, and Cody and R. had not bathed in more than a week and appeared at school dirty. The health department condemned the home as a safety hazard. Vincent agreed to a voluntary services case plan but before the Agency implemented it he was arrested for vandalism. It appears that on September 28 the children were delivered to Deanna, and they remained with her until October 9 when she left the state. Deanna left R. with the maternal grandmother and Cody with K., who was then 17 years of age and could not provide adequate care for him. Vincent was released from jail on October 3, but he did not retrieve the children.

On October 13, 2006, the Agency placed Cody and R. in foster care and filed petitions on their behalves under section 300, subdivision (b).[2] The parents' whereabouts were unknown. When the social worker asked Cody where he and R. had been living, he said, " '[w]e mostly stayed with Vince, but went back and forth between him and my mom.' He said his mom didn't

---

[1] Statutory references are to the Welfare and Institutions Code except when otherwise specified.

[2] Because R. is not involved in this appeal her petition is not in the record. We discuss her and K. only as necessary.

have a house so she would visit them where they lived with [Vincent.]" Since Vincent's arrest, Cody had been staying with Deanna at a motel and at the home of a friend of Deanna. He wanted to live with Deanna even though she had no permanent housing. He did not want to live with Vincent because of physical abuse.

The social worker wrote in the jurisdictional and dispositional report that "[d]espite losing parental rights of Cody, [Deanna] has maintained a parental relationship with this child. Cody and [R.] have a close bond with their mother and hope to eventually return to her care." The social worker recommended that Vincent be offered reunification services for both children and Deanna be offered services only for R. because her parental rights over Cody were previously terminated.

On November 7 the court continued the jurisdictional and dispositional hearing because the parents' whereabouts remained unknown. The following day, Deanna telephoned the social worker and explained she "had left town for a few weeks and went to Virginia to 'get my thoughts clear.' " Deanna told the social worker that Vincent adopted Cody only so she could continue to have contact with him, and Cody and R. "had stayed with her for a year, prior to her being evicted."

On November 14 the court again continued the jurisdictional hearing, noting Vincent's whereabouts remained unknown. On November 27 Vincent appeared, but Deanna was not present. Attorneys for Deanna and Cody moved for her designation as his presumed mother, and the court denied the motions without prejudice. The court again continued the matter.

Deanna first appeared at a special hearing on December 5, 2006, during which the court set a briefing schedule for the presumed mother issue. In January 2007 Deanna and Cody submitted memoranda of points and authorities in support of their motions. Cody's memorandum stated Vincent "allowed the children to live with [Deanna] soon after jurisdiction in the prior proceedings was terminated," and "Cody is in an adoption that has failed and there is an opportunity for him to live with his mother as his mother has continued to be an important person in his life." Deanna's memorandum stated that after termination of her parental rights over Cody in 2001 "she continued to maintain regular custody of Cody." The motions sought reunification services for Deanna to assist her in gaining custody of Cody.

The Agency opposed the motions, citing section 366.26, subdivision (i)(1). At a special hearing on February 7, the court denied the motions as improper collateral attacks on the earlier judgment of termination.

At a contested jurisdictional and dispositional hearing on February 20, the court sustained the petition, declared Cody a dependent child and continued him in foster care. The court ordered Vincent to comply with his case plan for Cody and R., and ordered Deanna to comply with her case plan for R. The court, however, also ordered the Agency to evaluate Deanna's home for possible placement of Cody, explaining that "[i]f she can qualify as a foster mom she could be the foster mother." Additionally, the Agency informally agreed to facilitate visitation between Deanna and Cody. The Agency was concerned about Deanna's drug use and refusal to voluntarily undergo drug testing, and the court ordered her to report to the Substance Abuse Recovery Management System program.

## DISCUSSION

### I

### *Presumed Mother Status*

Deanna and Cody contend the juvenile court erred by determining that as a matter of law she cannot be deemed a presumed mother in this proceeding because of the earlier termination of her parental rights over him.[3] They cite Family Code section 7611, subdivision (d), under which a man is a presumed father if he "receives the child into his home and openly holds out the child as his natural child." California differentiates between the rights of presumed, natural and alleged fathers, and " '[p]resumed father status ranks the highest. Only a "statutorily presumed father" is entitled to reunification services under . . . section 361.5, subdivision (a) and custody of his child under . . . section 361.2.' " (*In re Mary G.* (2007) 151 Cal.App.4th 184, 197 [59 Cal.Rptr.3d 703].)

"The paternity presumptions are driven, not by biological paternity, but by the state's interest in the welfare of the child and the integrity of the family. [Citation.] The familial relationship between a nonbiological father and an older child (over two years of age), resulting from years of living together in a purported parent/child relationship, is 'considerably more palpable than the biological relationship of actual paternity' and 'should not be lightly dissolved.' " (*In re Salvador M.* (2003) 111 Cal.App.4th 1353, 1357–1358 [4 Cal.Rptr.3d 705].)

---

[3] Vincent filed a respondent's brief in which he adopts the positions of Deanna and Cody.

The scope of Family Code section 7611, subdivision (b) has been expanded by case law to include granting "presumed mother" status to a nonbiological parent under certain circumstances.[4] In *Elisa B., supra,* 37 Cal.4th at page 125, the court held a lesbian was the presumed mother of twins born to her domestic partner, because she took them into her home and held them out as her natural children. In *In re Salvador M., supra,* 111 Cal.App.4th at pages 1357–1359, the court held that a woman who raised her half brother as her son from the age of three was his presumed mother under Family Code section 7611, subdivision (d), particularly since the boy believed she was his mother and that her biological children were his siblings.

Deanna and Cody cite no authority for the designation of a biological mother, whose identity is of course known, as a presumed mother. They assert she is entitled to presumed mother status in this action because after her parental rights were terminated in 2001, Cody continued to live with her and she held him out to be her biological son.

In rejecting that argument, the juvenile court relied on section 366.26, subdivision (i)(1), which provides: "Any order of the court permanently terminating parental rights under this section shall be conclusive and binding upon the child, upon the parent or parents and upon all other persons who have been served with citation by publication or otherwise as provided in this chapter. After making the order, the juvenile court shall have no power to set aside, change, or modify it, except as provided in paragraph (2), but nothing in this section shall be construed to limit the right to appeal the order."

Under section 366.26, subdivision (i)(1), "a juvenile court lacks jurisdiction to modify or revoke an order terminating parental rights once it has become final." (*In re Jerred H.* (2004) 121 Cal.App.4th 793, 796 [17 Cal.Rptr.3d 481] (*Jerred H.*).) In *Jerred H.,* the appellate court held the juvenile court lacked jurisdiction to consider a motion to establish the proposed adoptive father, from whom the teenage child was removed before the adoption was final, as a presumed father under Family Code section 7611, subdivision (d) after the termination of all parental rights under Welfare and Institutions Code section 366.26.

In *Jerred H.,* the court rejected the notion Family Code section 7630, subdivision (b) conferred jurisdiction on the juvenile court to reconsider the

---

[4] In *Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 120, footnote 7 [33 Cal.Rptr.3d 46, 117 P.3d 660], the court explained the "fact that questions involving the determination of parentage 'focus on paternity is likely [because] the identity of a child's birth mother is rarely in dispute.' "

termination of parental rights. That statute provides that "[a]ny interested party may bring an action *at any time* for the purpose of determining the existence or nonexistence of the father and child relationship presumed under subdivision (d) or (f) of [Family Code] Section 7611." (Italics added.) The court explained that "interpreting this section to authorize proceedings to designate a presumed father after parental rights have been terminated under Welfare and Institutions Code, section 366.26 would undermine the finality of an order terminating parental rights, the importance of which our Supreme Court has emphatically recognized. [Citation.] Indeed, if this argument were accepted, it would be possible to seek presumed father status even after a child has been adopted by another father. Family Code section 7630 must be understood to mean that proceedings under that section may be brought at any time before parental rights have been terminated under section 366.26." (*Jerred H., supra*, 121 Cal.App.4th at p. 799.)[5]

We agree with the *Jerred H.* court's analysis. If Family Code section 7630, subdivision (b) were read to allow a parent to seek presumed parent status after termination of parental rights, Welfare and Institutions Code section 366.26, subdivision (i)(1) would be meaningless and the goals of stability and finality within a reasonable time would be substantially undermined. " '[W]e do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is [a] part so that the whole may be harmonized and retain effectiveness." [Citation.]' " (*Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1065 [77 Cal.Rptr.2d 202, 959 P.2d 360].)[6]

---

[5] In *In re David H.* (1995) 33 Cal.App.4th 368, 385 [39 Cal.Rptr.2d 313], the court explained that as "a general matter, it would be inimical to the policies underlying the juvenile court law to allow parents to raise a collateral challenge to an order terminating parental rights on the ground that the child's posttermination placement did not meet with the parents' expectations. Such relief is not available, whether the parents' expectations were not met because of an uncontrollable turn of fate [citation] or for any other reason." (See also *In re Ronald V.* (1993) 13 Cal.App.4th 1803, 1806 [17 Cal.Rptr.2d 334] [biological mother who acquiesced to termination of parental rights on understanding her friend would adopt the child could not petition for modification and de facto parent status when the friend died before the adoption].)

[6] Presumably in response to *Jerred H.*, in 2005 the Legislature added section 366.26, subdivision (i)(2), which provides in part: "A child who has not been adopted after the passage of at least three years from the date the court terminated parental rights and for whom the court has determined that adoption is no longer the permanent plan may petition the juvenile court to reinstate parental rights pursuant to the procedure prescribed by Section 388." (See Stats. 2005, ch. 640, § 6.5.) The *Jerred H.* court pointed out that because it lacked jurisdiction to reinstate parental rights or designate the stepfather as a presumed father, "[i]n all likelihood, Jerred will be left a 'legal orphan,' despite the recognized disfavor of such status." (*Jerred H., supra*, 121 Cal.App.4th at p. 799.) The court invited the Legislature to consider "authorizing judicial intervention under very limited circumstances following the termination of parental rights and prior to the completion of adoption." (*Ibid.*)

Deanna and Cody contend *Jerred H.* is inapplicable because it involved a collateral attack on a judgment of termination of parental rights before the adoption was finalized, and in this action they seek presumed mother status long after Cody's adoption was finalized. Although *Jerred H.* was in a different procedural posture, its holding promotes public policy in preserving the finality of termination judgments, and it is equally applicable to a collateral attack on a termination judgment brought, as here, long after entry of the judgment.

■ We are also unpersuaded by Deanna and Cody's contention their motions for presumed mother status were not collateral attacks on the 2001 termination judgment, because after termination Deanna was a "legal stranger" to Cody and they were free to forge a new relationship the court should now recognize.[7] "The Uniform Parentage Act defines the parent-child relationship as 'the legal relationship existing between a child and the child's natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations.' " (*County of Ventura v. Gonzales* (2001) 88 Cal.App.4th 1120, 1122 [106 Cal.Rptr.2d 461], citing Fam. Code, § 7601.) "Under section 366.26, the purpose of a termination order is to free a child for adoption; i.e., to extinguish the child's ties to his biological parents and enable him to become a member of a new, stable family. [Citations.] An order terminating parental rights ' "represents the total and irrevocable severance of the bond between parent and child." ' " (*County of Ventura v. Gonzales, supra,* at p. 1123; see *Fraizer v. Velkura* (2001) 91 Cal.App.4th 942, 946 [110 Cal.Rptr.2d 918] ["order terminating the parent and child relationship divested the parent and child of all legal rights and powers with respect to each other"].)

The judgment terminating Deanna's rights severed her legal interest in Cody. In this action, their motions sought reinstatement of her legal rights through the presumed parenthood statute, which, if applied, would give Deanna reunification services and perhaps custody of Cody. As the court noted, the motions were an attempt to revive Deanna's "parental rights under a different theory." We acknowledge Deanna and Cody's shared desire to be

---

[7] Cody submits that after he was adopted and the first dependency proceeding was terminated, he "had the freedom of all children to develop personal relationships, free of the court's interference," and in this proceeding "Deanna was a legal stranger to [him]" who "subsequent to the termination of parental rights and adoption, established a parent-child relationship with him." Deanna claims she "does not seek to have the termination of her parental rights set aside, but only seeks to become a placement option for Cody," and she "has the same legal rights to be recognized as Cody's presumed mother as any other legal stranger." She also asserts her motion did not challenge the termination of parental rights, because even if she were designated a presumed mother she would remain a "legal stranger" to Cody.

together, but their motions were indubitably collateral attacks on the termination judgment. Thus, the court correctly determined that as a matter of law it lacked jurisdiction to consider the motions.

Deanna asserts presumed parent status for a biological parent whose rights were previously terminated is proper in a second dependency proceeding against an adoptive parent, because "[f]or many children who were adopted by relatives or family friends, the social, emotional relationship between biological parent and child continues." Further, the social worker wished Deanna could be considered for presumed parent status in this action, and in denying the motions the court stated, "I feel bad about this." Given the plain language of section 366.26, subdivision (i)(1), however, any exception to the statute for circumstances such as those here would have to come from the Legislature. There is simply no statute that would allow Deanna to be designated a presumed mother after the termination of her parental rights.[8]

II

*ICWA*

■  The court and the Agency have an affirmative and continuing duty to inquire whether a child for whom a petition has been filed under section 300 is or may be an Indian child. (Cal. Rules of Court, rule 5.664(d).) "The ICWA provides that 'where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.' [Citation.] If the tribe is unknown, the notice must be given to the Bureau of Indian Affairs [BIA] as the agent for the Secretary of the Interior. [Citations.] 'No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the . . . tribe [or] the [BIA].' " (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 707 [1 Cal.Rptr.3d 897].)

Cody contends the court committed reversible error by not making any inquiry as to his possible status as an Indian child within the meaning of ICWA. We need not address the point more thoroughly as the Agency agrees limited remand is required for ICWA compliance. (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 705–706 [43 Cal.Rptr.3d 171].)

---

[8] We note that at the hearing on the motions for presumed mother status the court stated, "in the past I have had mother's parental rights terminated and who readopted their kids." The matter was not discussed further.

## DISPOSITION

The jurisdictional and dispositional order is reversed. The case is remanded to the juvenile court with directions to make the proper inquiry under the ICWA, and to order the Agency to comply with the notice provisions of the ICWA if any Indian heritage is indicated. If no Indian heritage is indicated, or if it is indicated but after proper notice no tribe claims Cody is an Indian child, the jurisdictional and dispositional order shall be reinstated.

Haller, J., and McIntyre, J., concurred.