Filed 9/18/25  In re M.M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.M., et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, Plaintiff and Respondent, v. VANESSA F., Defendant and Appellant. | F089237 (Super. Ct. Nos. JVDP-22-000016, JVDP-22-000018, JVDP-22-000019, JVDP-22-000023, JVDP-22-000024, JVDP-22-000025) OPINION |

-ooOoo-

APPEAL from an order of the Superior Court of Stanislaus County.  Annette Rees, Judge.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas Boze, County Counsel, Mark Gabriel Doronio, Deputy County Counsel; Gordon-Creed, Kelley, Holl & Sugerman, Jeremy Sugerman and Anne H. Nguyen, for Plaintiff and Respondent.

-ooOoo-

Vanessa F. (mother) is the mother of Mia M., Destiny M., K.M., Kimberly M., Damian M., and Hazel M. (collectively "the children"), who are the subjects of this dependency case. Mother appeals from the juvenile court's order selecting guardianship as the permanent plan and terminating dependency jurisdiction. She contends the juvenile court erred by allowing the children to determine whether or not visitation would occur. We conclude the juvenile court did not abuse its discretion in entering the challenged visitation orders. Therefore, we affirm.

## FACTUAL AND PROCEDURAL SUMMARY

### *Initial Removal*

In February 2022, the Stanislaus County Community Services Agency (agency), received a referral alleging the children's 14-year-old half-sibling was sexually abused by their father, Rafael Z. (father). The children reported that their parents yelled at each other and father inflicted physical abuse on them. Father denied the sexual abuse allegations, and mother immediately accused the children's sibling of lying about the allegations. Mother had been in a relationship with father for 15 years, and she did not believe father harmed any of her children. The children were taken into protective custody with the assistance of law enforcement.

The agency filed juvenile dependency petitions alleging the children and their half-sibling were described by Welfare and Institutions Code section 300, subdivision (b)(1), (c), (d), (g), and (j).[1] At the detention hearing held on February 15, 2022,[2] the children and half-sibling were detained from mother's custody, and a combined jurisdiction and disposition hearing was set for March 22.

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] References to dates are to dates in 2022 unless otherwise stated.

*Jurisdiction and Disposition*

The agency's jurisdiction and disposition report recommended the allegations in the petition be found true and family reunification services be provided to mother for the children and half-sibling. The children were placed in three separate resource family homes. Mother wavered on whether she believed the half-sibling's disclosure, and she did not plan on telling the children about the sexual abuse unless father was found guilty in his criminal matter. Mother informed the agency that she did not need any services, and she intended to move to Mexico or Nebraska once the children were returned to her care.

During mother's first visit with the children on February 28, she was argumentative and uncooperative with the agency's visitation staff. Mother initially indicated that she did not want to see the children, but she went into the visit after speaking with the social worker. The report noted that mother made promises the children would be returning home, and she also told the children that they would never come home. Mother's tone of voice fluctuated from angry to calm throughout the visit.

In March 2022, mother informed the social worker that she did not want to see the children until father's trial was over. However, she eventually requested to have her visits remain as scheduled. Mother was not participating in any of the services that the agency offered. Several visitation reports indicated mother had either minimal interaction with the children or focused on some children more than others.

At the jurisdiction and disposition hearing held in June 2022, the juvenile court sustained the allegations in the petitions, ordered family reunification services be provided to mother, and denied family reunification services to father. Mother's case plan consisted of individual and family counseling, classes for understanding sexual abuse of children, domestic violence assessment, and parenting classes. Supervised visits between mother and the children were ordered to continue. Visits between the children and father were found to be detrimental, and a criminal protective order prevented visits

3.

from occurring between them as well.  A six-month review hearing was set for December 13.

### *Family Reunification Period*

The agency's report for the six-month review hearing recommended that family reunification services continue for mother.  The children were placed together in a resource family home, but the half-sibling had run away from her placement.  Mother's behavior had improved during her weekly supervised visits with the children.  In November 2022, visitations were frequently ended early because the children requested a one-hour visit instead of two-hours.  Mother also terminated visits early depending on her mood and circumstances.

The report described mother's inconsistent participation in services.  During mother's meetings with the social worker, she often shared that she did not want to complete her case plan.  She also expressed her frustration by offering to proceed with adoptions for the children.  At the six-month review hearing, mother's family reunification services were ordered to continue.

The report for the 12-month review hearing recommended mother's family reunification services be terminated.  Her participation in services remained inconsistent, and she cancelled several visits with the children.  The majority of mother's visits went well, but there were concerns that she would only interact with the older children on occasion.  The agency recommended that mother's visits be reduced to once per month with the setting of a section 366.26 hearing to determine an appropriate permanent plan.  At the 12-month review hearing, the juvenile court terminated mother's family reunification services and set a section 366.26 hearing for August 3, 2023.  Supervised visitation between mother and the children was ordered to occur once per month.

### *Section 366.26 Hearing*

The report for the section 366.26 hearing recommended that the children continue in foster care with a permanent plan of placement with a fit and willing relative.  The

children remained placed together in a resource family home. Each of the children were adjusting well to the home, but Kimberly and Damian were having behavioral and mental health issues. Kimberly, at eight years of age, was hearing voices and becoming non-responsive to the resource parent. Six-year-old Damian was being provided constant supervision due to "bad thoughts" about touching girls. 12-year-old Mia, 11-year-old Destiny, nine-year-old K.M., and five-year-old Hazel were not demonstrating any behavioral or emotional issues.

Mother's visitation was transitioned from in-person to virtual when she moved out of the state. Mother initially declined virtual visits in April 2023, but she requested virtual visits in May 2023. Only Kimberly, Damian, and Hazel attended the first virtual visits because the older children refused to attend. Kimberly informed the social worker that mother was "mad" at the visit because Hazel was not in school. In June 2023, Mia, Destiny, and Hazel attended a virtual visit, but the visit ended early. On July 13, 2023, all of the children except Hazel indicated that they did not want to attend virtual visits with mother. The children did wish to visit with mother in person.

On August 10, 2023, the juvenile court ordered the children to continue in foster care with a permanent plan of placement with a fit and willing relative. Mother's supervised visitation with the children remained monthly. A post-permanency review hearing was scheduled for February 6, 2024.

### *Post-Permanency Proceedings*

The agency's status review report, filed January 25, 2024, recommended the children's permanent plan continue. The children's half-sibling was placed on a trial visit with mother, who had moved back to California. The children refused to attend visits with mother. The social worker asked the children to provide a reason, but they only responded that they did not want to visit. The social worker encouraged the children to participate, but they consistently refused.

5.

The report noted that the agency would respect the children's decision to visit or refuse to visit, and the social worker would transport the children to the visit if they chose to visit. The agency's proposed case plan included a provision that the children had a right to refuse visits with the mother if they did not want to visit. On February 6, 2024, the juvenile court ordered the children's current permanent plan to remain, and it adopted the agency's proposed orders and case plan.

In advance of the next post-permanent plan review, the agency recommended the setting of a section 366.26 hearing for the children. It was also recommended that the half-sibling be returned to mother's care with dismissal of her dependency. The children's long-term care providers were prepared to become their legal guardians. The children had done well in their placement and were having no significant behavioral issues.

The children continued to refuse visits with mother and their half-sibling. Mother told the social worker that the children were important to her, and she wanted to visit with the children once they chose to do so. The agency's recommended orders provided that visitation with mother and the children be suspended due to the children's continued refusal.

On August 15, 2024, a contested review hearing was held. Mother was present and oral arguments were presented on the record. The juvenile court adopted the agency's recommendation, and it found there would be detriment to force the children to visit with mother. A section 366.26 hearing was set for December 13, 2024.

*Guardianship Orders*

The report for the subsequent section 366.26 hearing recommended that a legal guardianship be established for the children without dependency. Each of the children expressed a desire to have their current resource parents become their legal guardians. The children often indicated they did not want to live anywhere else. Kimberly and Damian were the only children receiving mental health services, and each of the children

6.

were developing in an age-appropriate manner. The children had no contact with their father, who was sentenced to a term of 11 years in state prison in July 2024.

14-year-old Mia, 13-year-old, Destiny, 11-year-old K.M., 10-year-old Kimberly, seven-year-old Damian, and 6-year-old Hazel continued to refuse visits with mother. The children's only explanation for the refusal was that they simply did not want to visit with her. The agency recommended that reasonable supervised visitation with mother be granted, if the children were willing to attend. The report noted that the children should not be compelled to attend visits, and the legal guardians would contact mother when and if the children decided to visit.

At the contested section 366.26 hearing held on January 22, 2025, mother was present and represented by counsel. Counsel for the agency and children submitted on the agency's reports and recommendation. Mother's counsel requested the juvenile court maintain the children's current permanent plan and order the children to visit mother on a monthly basis. Her counsel argued that the agency's recommended visitation order would leave mother with no remedies.

After hearing argument from counsel, the juvenile court adopted the agency's recommendation and ordered the children's care providers be appointed legal guardians without further dependency jurisdiction.

In making its visitation order, the juvenile court stated as follows:

"[T]he guardians will have prudent parent standards for any contact with the parents they believe to be appropriate and safe for the children. Four of these children are ten or older, and they have a right to voice their opposition to visitation and contact. There will be no orders to visit. It will be up to the children if they wish to visit or have contact. We have had previous hearings regarding their decision not to want to visit with their mother, and the Court found that their statements were credible in that regard."

During its recitation of the recommended findings and orders, the juvenile court went on to state:

"As I indicated, that reasonable supervised visitation with the mother, if the children are interested, is ordered, and the caregiver would be the individual to reach out to mother. Mother is not to contact the children or the caregiver."

The juvenile court's written orders state that visitation between the parents and children were scheduled as follows: "Legal guardians shall execute the Prudent Parent Standard for any contact with the parents that the Legal Guardians believe to be safe. Child will not be forced to visit." The court also adopted the agency's recommended order that supervised visitation would be granted, "if the children are willing to attend; however, the children shall not be compelled to attend." Mother filed a timely notice of appeal.

**DISCUSSION**

Mother contends the juvenile court's visitation orders improperly delegated to the children the decision whether she would have visits.

*A. Applicable Law*

Where a juvenile court orders visitation, it shall specify the frequency and duration of visits. The time, place, and manner of visitation may be left to the legal guardians, but they cannot have discretion to decide whether visitation actually happens. (*In re Grace C.* (2010) 190 Cal.App.4th 1470, 1478.) The juvenile court cannot delegate the decision concerning whether visitation will occur to any third party, including the child, the social services agency, or the guardian. (*In re Korbin Z.* (2016) 3 Cal.App.5th 511, 516–517 (*Korbin Z.*) [discretion delegated to child]; *In re Ethan J.* (2015) 236 Cal.App.4th 654, 661–662 (*Ethan J.*) [same]; *In re Kyle E.* (2010) 185 Cal.App.4th 1130, 1136 (*Kyle E.*) [improper delegation to social services agency]; *In re T.H.* (2010) 190 Cal.App.4th 1119, 1123 (*T.H.*) [improper delegation to custodial parent]; *In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1314 [improper delegation to legal guardian*]; In re Donnovan J.* (1997) 58 Cal.App.4th 1474, 1476–1477 [discretion delegated to therapist].)

8.

***B. Standard of Review***

We review an order setting visitation during a legal guardianship under the deferential abuse of discretion standard. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) A juvenile court abuses its discretion if its decision is arbitrary, capricious, or patently absurd. (*In re L.W.* (2019) 32 Cal.App.5th 840, 851.)

***C. Analysis***

***1. Detriment Finding***

Mother's first contention is that the juvenile court erred by failing to make a finding at the section 366.26 hearing that visitation between the children and mother was detrimental. Respondent asserts that mother misconstrued the juvenile court's actual statements when she claimed that the "court did not order that visitation actually occur between Mother and the children." "When, as here, the juvenile court orders a legal guardianship at the permanency planning hearing, it must 'make an order for visitation with the parents ... unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child.' (§ 366.26, subd. (c)(4)(C).)" (*Ethan J.*, *supra*, 236 Cal.App.4th at p. 661.)

The written orders signed and filed by the court provide that the legal guardians execute the prudent parent standard for any contact with the parents that the guardians believe to be safe. The orders also state that the children will not be forced to attend visits. In the oral pronouncement of its ruling, the juvenile court acknowledged the children's ages and ability to voice their opposition to its order for reasonable supervised visitation. Viewed in its proper context, the juvenile court's statement that "there will be no orders to visit," can be properly construed as a recognition that the court would not be compelling the children to participate in visits against their wishes. Such an order would be consistent with its prior finding that forcing the children to participate in visits would be detrimental. The prior hearings that resulted in that detriment finding were even discussed at the close of its ruling.

9.

To the extent the written orders conflict with the oral pronouncement, we conclude the written orders control. (See *In re Jerred H.* (2004) 121 Cal.App.4th 793, 798, fn. 3 ["This is a dependency proceeding, not a criminal action in which the judge is required to orally pronounce judgment against the defendant. Entry of the judge's written order is not a ministerial act similar to the entry of a sentence in the clerk's minutes."]; see also *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 756, fn. 1 ["court's oral pronouncement differed from its written order, the written order controls."].) Accordingly, we agree with respondent that there was no need for a finding that contact or visitation between mother and the children would be detrimental since the court's order specifically provided for visitation.

We also reject mother's complaints regarding the juvenile court's previous finding that forcing the children to visit would be detrimental as untimely. The orders from the contested review hearing held on August 15, 2024 were only reviewable by filing an extraordinary writ petition. (§ 366.26(*l*).) However, mother "did not appeal the disposition order or any order made between then and the [section 366].26 hearing. Nor did she petition for writ review, the exclusively prescribed vehicle for appellate review of an order setting a .26 hearing." (*In re Janee J.* (1999) 74 Cal.App.4th 198, 206; *id.* at pp. 210–214 [challenges to detriment findings are waived].)

A party may not, through an appeal of the most recent dependency order, challenge a prior order for which the statutory time for a notice of appeal has expired. (*In re Liliana S.* (2004) 115 Cal.App.4th 585, 589 (*Liliana S.*).) "[This] rule serves vital policy considerations of promoting finality and reasonable expedition, in a carefully balanced legislative scheme, and preventing late-stage 'sabotage of the process' through a parent's attacks on earlier orders." *(In re Jesse W.* (2001) 93 Cal.App.4th 349, 355; accord, *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 259.)

Thus, mother's concerns that there was insufficient evidence to support a finding that forcing the children to visit was detrimental is waived and/or forfeited. (*Liliana S.*,

10.

*supra,* 115 Cal.App.4th at p. 589.) Even were we to consider mother's belated claim, she has failed to provide an adequate record of the reporter's transcripts from the hearings involving the previous detriment findings. " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown[.]' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) The burden is on the appellant to overcome the presumption of correctness and to provide an adequate appellate record to demonstrate error. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) Failure to furnish an adequate record will result in affirmance of the order appealed from. (*Id*. at pp. 1295-1296.) Accordingly, here claims involving the previous detriment finding fail.

### 2. Visitation Order

Mother asserts the juvenile court abused its discretion when it ordered the children should not be forced to visit with mother. In support of her contention, mother cites to the cases of *Ethan J.*, *supra*, 236 Cal.App.4th 654 and *In re S.H.* (2003) 111 Cal.App.4th 310, 317 (*S.H.*). But her reliance on these cases is misplaced.

In *Ethan J.*, *supra*, 236 Cal.App.4th 654, the juvenile court terminated the mother's services and ordered a plan of guardianship with the maternal grandmother and monthly visits with the mother. (*Id*. at pp. 656-657.) Following the mother's section 388 petition, the court reinstated dependency jurisdiction over the minor and ordered liberal visitation. The parties agreed that the minor would not be forced to visit the mother. (*Id*. at p. 658.) The minor refused to visit the mother. Thereafter, the court ordered therapeutic supervised visitation to be preceded by a therapeutic evaluation of the minor to determine whether visitation would be detrimental to him. However, the minor refused to see the therapist. (*Id*. at p. 659.) Following a contested hearing, the juvenile court terminated its dependency jurisdiction, explaining, " '[I]f I continue dependency ... it's just going to exacerbate the anger. It's [a] difficult if not impossible situation but there's [nothing] I can do about it.' " (*Ibid*.)

11.

This Court reversed the termination order, and held that the juvenile court erred when it dismissed dependency jurisdiction knowing its visitation order would not be honored. (*Ethan J.*, *supra*, 236 Cal.App.4th 661.) We concluded that absent a finding of detriment, the minor's refusal "constituted an exceptional circumstance under section 366.3, subdivision (a) and warranted ongoing dependency jurisdiction." (*Id.* at p. 662.) Therefore, we determined "the juvenile court by terminating its dependency jurisdiction impermissibly delegated its authority over visitation to [the minor] and abused its discretion." (*Id.* at pp. 661-662.)

In *S.H.*, the juvenile court ordered monitored visitation for the mother following a contested jurisdiction hearing. (*S.H.*, *supra*, 111 Cal.App.4th at pp. 312-313.) At the hearing, the court sustained allegations that the mother failed to protect her children from physical and sexual abuse, and family reunification services were ordered for mother. (*Id.* at pp. 313, 316). The court did not specify either the frequency or length of the visitation, but it noted that some of the children feared their mother and had refused visits during their initial detention. (*Id.* at p. 316.) The visitation order then specified, " '[t]he social worker shall describe to the children the safeguards in place for monitoring for both mother and fathers, and if the children refuse a visit, then they shall not be forced to have a visit.' " (*Id.* at p. 316.)

On appeal from the jurisdiction hearing, the appellate court reversed the order, finding it "impermissibly delegate[d] to [the] children the authority to determine whether any visits will occur." (*S.H.*, *supra*, 111 Cal.App.4th at p. 313.) The appellate court acknowledged the order "affirmatively determine[d]" mother's right to visitation "rather than making [it] entirely contingent on the child's consent." (*Id.* at p. 318.) It also noted the juvenile court made additional orders designed to encourage visitation, including ordering counseling for the children and for their mother. (*Id.* at pp. 318-319.) Nevertheless, the appellate court concluded that "by failing to mandate any minimum number of monitored visits per month or even to order that *some* visitation *must* occur

12.

each month, the [juvenile] court's abstract recognition of [the mother's] right to visitation [was] illusory, transforming the children's ability to refuse 'a visit' into the practical ability to forestall any visits at all." (*Id.* at p. 319.)

Contrasted with the lack of guidance from the juvenile courts in *Ethan J.* and *S.H.* is the order issued in *In re Danielle W.* (1989) 207 Cal.App.3d 1227 (*Danielle W.*). There, the juvenile court ordered the mother was entitled to visitation but stated all visitation would be at the social worker's discretion and the children's discretion, stating, " 'I am not going to force them to visit when they don't want to. But whenever they want to, it can be at a location selected by the Department of Children's Services, which should be designed to accommodate both the mother and the children.' " (*Id.* at p. 1233.) On appeal, the appellate court noted, "The nature of the task of the juvenile court system in responding to the rapidly changing and complex family situations which arise in dependency proceedings and the interests of judicial economy require the delegation of some quasi-adjudicatory powers to a member of the executive branch dedicated to the dependent child's welfare. As long as that role is limited and subject to supervision, as it was here, there is no violation of the separation of powers doctrine." (*Id.* at p. 1237.)

The appellate court concluded this order did not improperly delegate the court's control over visitation, nor did it violate the separation of powers doctrine as an improper delegation of judicial power. (*Danielle W.*, *supra*, 207 Cal.App.3d at p. 1237.) Instead, it was determined the juvenile court properly ordered visitation under specific conditions that allowed the children to express their views regarding visitation but did not allow them to deny visitation altogether. (*Ibid.*) The appellate court opined an order that granted "the Department *complete* and *total discretion* to determine whether or not visitation occurs would be invalid.... The juvenile court must first determine whether or not visitation should occur, as was done here, and then provide the Department with guidelines as to the prerequisites of visitation or any limitations or required circumstances." (*Ibid.*)

In the present case, we find the juvenile court did not delegate its authority to the children to determine whether visitation would occur in their sole discretion. The juvenile court ordered reasonable supervised visitation to occur. In line with the guidance of, *S.H.*, *supra*, 111 Cal.App.4th at page 319, it determined the legal guardians must apply the prudent parent standard for any contact that was believed to be safe between the parents and children. Harmonizing the reasonable supervised visits language with the children "will not be forced to visit" language means the children were not to be physically forced to attend any particular visit, but supervised visitation should occur at a reasonable rate. Such an order properly delegates restrictions for the " 'time, place, and manner' " of the children's visitation to the guardians with consideration for the children's wishes. (*Korbin Z.*, *supra*, 3 Cal.App.5th at p. 517.)

"The goal of dependency proceedings, both trial and appellate, is to safeguard the welfare of California's children." (*In re Josiah Z.* (2005) 36 Cal.4th 664, 673.) "Once reunification services are terminated ..., the focus of the proceedings changes from family reunification to the child's interest in permanence and stability." (*In re G.B.* (2014) 227 Cal.App.4th at 1147, 1163.) Furthermore, the court must consider the child's best interests when making decisions at the section 366.26 hearing. (See section 366.26, subd. (h)(1) [At all proceedings under this section, the court shall consider the wishes of the child and shall act in the best interests of the child."].)

The court's visitation order "must be viewed in the context of the family dynamics in play" as well as the prior efforts of the agency and the court to facilitate visitation. (*In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356.) The court's directive that the children not be forced to visit must be viewed in the context of its previous determination that forcing the children to visit with mother would be detrimental. Such an order was only made once reunification services were terminated, which further distinguishes the present case from the circumstances in *S.H.*

14.

Therefore, the court's order was a proper exercise of discretion, balancing the children's needs with mother's rights. (See *In re Julie M.* (1999) 69 Cal.App.4th 41, 50-51 [a child's emotional readiness is proper factor for consideration in administering visitation so long as it is not the "the *sole* factor"].) Certainly, the children refused visits, but the children's wishes were never "the *sole* factor in determining whether any visitation takes place." (*S.H.*, *supra*, 111 Cal.App.4th at p. 319.) Mother's inappropriate conduct throughout the reunification period contributed to the deterioration of her relationship with the children, and the court properly considered mother's failure to make any progress in repairing those relationships while fashioning its visitation orders.

In sum, mother has failed to demonstrate that the juvenile court abused its discretion. Our role is not to substitute our judgment for that of the juvenile court or reweigh the evidence. " ' " 'The appropriate test for abuse of discretion is whether the [juvenile] court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " ' " (*In re Emmanuel R.* (2001) 94 Cal.App.4th 452, 465, 114 Cal.Rptr.2d 320.) Our review of the juvenile court's visitation order shows that the court was properly focused on the children's overall well-being in light of its selection of a permanent plan that did not involve returning the children to mother. As a result, we find no abuse of discretion.

## DISPOSITION

The juvenile court's order is affirmed.

FAIN, J.[*]

WE CONCUR:


HILL, P. J.


LEVY, J.

---

[*] Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.