Filed 5/25/16  Rai v. Real Time Resolutions CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NEELAM BALA RAI,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>REAL TIME RESOLUTIONS, INC.,<br><br>        Defendant and Respondent;<br><br>MICHAEL ROONEY,<br><br>        Objector and Appellant. | A143787<br><br>(Alameda County<br>Super. Ct. No. RG 14738411) |

Plaintiff Neelam Bala Rai filed an adversary proceeding against defendant Real Time Resolutions, Inc. (Real Time) in her bankruptcy case, claiming injury from an allegedly frivolous adversary proceeding filed earlier by Real Time.  The bankruptcy court dismissed Rai's proceeding, ruling that her state law claims for malicious prosecution and unfair business practices were preempted by federal law.  Rai thereafter filed the present action, alleging the same claims found preempted by the bankruptcy court and joining four other claims based on the failure of Real Time to remove a lien from her real property in 2005.

Real Time demurred to the complaint and sought sanctions against Rai and her attorney.  The trial court sustained the demurrer without leave to amend, finding the claims first asserted in the bankruptcy court to be barred by the doctrine of res judicata and holding the remaining claims to be barred by the statute of limitations.  The court

also levied sanctions against Rai's attorney, appellant Michael Rooney, for his refiling of the claims dismissed in the bankruptcy adversary proceeding. We affirm.

## I. BACKGROUND

In August 2005, Rai obtained a line of credit (LoC) from Real Time, secured by a residence she owned in Berkeley (residence).[1] A few months later, in October 2005, Rai refinanced the mortgage on the residence (mortgage). At closing of the mortgage, Real Time submitted a demand for payment of the $71,677 outstanding balance of the LoC, and this demand was satisfied (the payoff). Despite this, the deed of trust associated with the LoC has never been reconveyed, and the lien remains against her residence.

In March 2010, Rai filed for bankruptcy. Although Rai paid off the outstanding balance of the LoC in 2005, she apparently resumed drawing against the LoC at some time prior to her bankruptcy filing. In a schedule submitted in the bankruptcy proceeding, the contents of which Rai declared to be true under penalty of perjury, she listed an outstanding debt under the LoC of $300,000. In June 2010, Rai filed a motion in her bankruptcy case to value the collateral securing the LoC, arguing the LoC debt should be considered unsecured because the outstanding balance of the mortgage, which Rai claimed to be the senior lien, exceeded the value of the residence. (11 U.S.C. § 506(a), (d).) The bankruptcy court granted the motion, declared that the LoC lien could not be enforced, and held that it would be voided upon completion of the bankruptcy proceedings.

Over a year later, in September 2011, Real Time filed an adversary proceeding in Rai's bankruptcy case, seeking a determination of the LoC lien priority vis-à-vis the mortgage. The bankruptcy court dismissed this proceeding. Although the bankruptcy

---

[1] The record is not always clear as to the identity of parties acting on behalf of the lender in connection with the LoC. Consistent with the practice of the parties, we use the designation "Real Time" to refer generically to entities acting in this capacity.

2

court prepared a decision explaining its rationale, that decision is not found in the appellate record.[2]

At some point, Rai filed an adversary proceeding against Real Time in the bankruptcy court. An amended complaint in that proceeding, filed in August 2013, alleged causes of action for malicious prosecution and unfair business practices under Business and Professions Code section 17200, on the ground Real Time's prior adversary proceeding was meritless and was maintained for the improper purpose of extorting an undeserved settlement from Rai.

Real Time moved for judgment on the pleadings on Rai's adversary proceeding, arguing state law claims, such as Rai's malicious prosecution and unfair business practices claims, "are preempted by applicable bankruptcy law when such causes of action arise out of a prior proceeding in bankruptcy court under bankruptcy law." The bankruptcy court granted the motion for judgment on the pleadings "[f]or the reasons stated on the record at the hearing," and judgment dismissing Rai's adversary proceeding was entered on August 15, 2014. A transcript of the hearing at which the bankruptcy court explained its reasoning is not included in the appellate record, but we presume, and Rai does not dispute, that the court accepted Real Time's preemption argument.[3] There is no evidence in the appellate record of an appeal of this judgment.

Less than two weeks later, Rai filed the present action in superior court against Real Time and other parties. Her operative pleading, the first amended complaint (complaint), alleges causes of action for breach of contract, cancellation of instrument, negligence, negligence per se, malicious prosecution, and unfair business practices. The

_____

[2] Rai's first amended complaint in this action alleges that the bankruptcy court dismissed Real Time's adversary proceeding after concluding that Real Time had notice of the intervening recordation of the mortgage lien when it permitted Rai to make draws against the LoC following the payoff. As a result, the LoC lien did not qualify for a superior position.

[3] The record does contain a transcript from an earlier hearing at which the bankruptcy judge expressed favorable interest in the preemption argument. It is possible this is the hearing to which the bankruptcy judge was referring, but the order is unclear in this regard.

3

breach of contract action alleges that the LoC was paid off at the time of closing of the mortgage and contends defendants violated the LoC contract by failing to reconvey the deed of trust at that time. The claim seeks specific performance of the contract. The cancellation of instrument cause of action seeks execution of a certificate of discharge of the LoC under Civil Code section 2941, on the grounds the LoC was satisfied. The two negligence causes of action contend defendants were negligent in failing to reconvey the LoC deed of trust upon Rai's satisfaction of the outstanding balance. The malicious prosecution and unfair business practices claims are materially identical to the causes of action dismissed by the bankruptcy court.

Real Time filed a demurrer to the complaint, arguing primarily that the contract, cancellation, and negligence claims were barred by the statute of limitations and all claims were barred by the doctrine of res judicata. At the same time, Real Time filed a motion for sanctions against Rai and Rooney, arguing this action is frivolous.

The trial court sustained the demurrer without leave to amend and granted the motion for sanctions in part. In an extensive written opinion, the trial court found the malicious prosecution and unfair business practices claims barred by res judicata, but it found no such bar to the remaining causes of action. The court, however, found these claims barred by the statute of limitations, since all were premised on Real Time's failure to extinguish the lien in 2005, when it received the payoff. The court rejected Rai's argument that maintenance of the lien was, in effect, a continuing violation. The court denied the motion for sanctions against Rai, but it granted limited sanctions against Rooney, based on his refiling of the malicious prosecution and unfair business practices claims previously dismissed by the bankruptcy court.

## II. DISCUSSION

Rai contends the trial court erred in sustaining the demurrer without leave to amend, while Rooney contends the trial court abused its discretion in awarding sanctions.

" 'A demurrer tests the legal sufficiency of the complaint . . . .' [Citation.] In determining whether appellant properly stated a claim for relief, 'our standard of review is clear: " 'We treat the demurrer as admitting all material facts properly pleaded, but not

4

contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. . . ." ' [Citation.] Our review is de novo." (*Golden Gate Hill Development Co., Inc. v. County of Alameda* (2015) 242 Cal.App.4th 760, 765.)

**A.  *Res Judicata***

" 'Res judicata' describes the preclusive effect of a final judgment on the merits." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.) Because "[t]he normal rules of *res judicata* and collateral estoppel apply to the decisions of bankruptcy courts," (*Katchen v. Landy* (1966) 382 U.S. 323, 334), the involuntary dismissal of an adversary proceeding acts as a judgment on the merits for purposes of res judicata (*In re Schimmels* (9th Cir. 1997) 127 F.3d 875, 884). When a federal court renders a judgment while acting within its federal question jurisdiction, as the bankruptcy court did here, California courts must give to that judgment the same preclusive effect the judgment would have in a federal court. (*Semtek Int'l Inc. v. Lockheed Martin Corp.* (2001) 531 U.S. 497, 507; *Martin v. Martin* (1970) 2 Cal.3d 752, 761.) Accordingly, we apply federal law in determining the preclusive scope of the bankruptcy court's judgment.

Under federal law, "Res judicata . . . applies only where there is '(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties.' [Citation.] . . . We consider four factors in determining an 'identity of claims': [¶] (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. [¶] [Citation.] 'The last of these criteria is the most important.' [Citation.] [¶] . . . [¶] . . . A plaintiff need not bring every possible claim. But where claims arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding." (*TIRN v. U.S. Dept. of State* (9th Cir. 2012) 673 F.3d 914, 917–918.)

5

We are counseled by the Ninth Circuit, "in the unique bankruptcy context, 'the principle of res judicata should be invoked only after careful inquiry because it blocks unexplored paths that may lead to truth . . . .' " (*In re Enewally* (9th Cir. 2004) 368 F.3d 1165, 1172–1173.)

There is no real question the two claims actually decided by the bankruptcy court are barred by res judicata. As pleaded in this action, the claims are materially identical to the claims dismissed by the bankruptcy court. Both are based on Real Time's allegedly wrongful filing of the adversary proceeding; both seek damages for the loss of rental value during the pendency of Real Time's adversary proceeding; and much of the language in the two pleadings is identical. (See *DCFS USA, LLC v. District of Columbia* (D.D.C. 2011) 820 F.Supp.2d 1, 3 [claim barred by res judicata when identical to claim decided in earlier adversary proceeding].) The judgment in the bankruptcy adversary proceeding therefore precluded Rai's refiling of these claims in a subsequent state lawsuit.

Rai makes no argument against the application of res judicata to these claims in her opening brief. In the reply brief, she argues a finding of preemption is not a decision on the merits and the bankruptcy court lacked subject matter jurisdiction because it erred in finding Rai's claims to be preempted. Both arguments are without merit. Contrary to Rai's contention, a judgment based on preemption *is* a decision on the merits for purposes of res judicata. The legal basis of the decision does not matter, so long as the claims are actually resolved. (*Stewart v. U.S. Bancorp* (9th Cir. 2002) 297 F.3d 953, 956 ["The phrase 'final judgment on the merits' is often used interchangeably with 'dismissal with prejudice.' [Citations.] . . . '[U]nless the court in its order for dismissal otherwise specifies, a dismissal . . . other than a dismissal for *lack of jurisdiction*, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.' "]; *In re Schimmels, supra*, 127 F.3d 875, 884 [involuntary dismissal of an adversary proceeding is a judgment on the merits for purposes of res judicata].) Rai cites no relevant case law to the contrary. With respect to subject matter jurisdiction, as the trial court pointed out, Rai argued extensively in the bankruptcy court that it *did* have

6

subject matter jurisdiction over the claims.  Further, an error of law, if error it was, did not retroactively divest the court of such jurisdiction.  (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239.)  Again, Rai cites no relevant case law in support of her position.

The remaining claims have a different factual basis.  Rather than Real Time's maintenance of the adversary proceeding in 2011, these claims are based on Real Time's failure to extinguish the LoC lien in 2005, when it received the payoff.[4]  We find it unnecessary to decide whether these claims, too, are barred by res judicata or collateral estoppel because, as discussed below, we conclude they are barred by the statute of limitations.

## B.  *Statute of Limitations*

Rai's claims for breach of contract, cancellation of instrument, negligence, and negligence per se are all premised on the failure of Real Time to reconvey the lien in 2005 when it received the payoff.  While Rai does not dispute the statutes of limitations on the claims would have long since lapsed if they accrued at that time, she contends accrual of her causes of action was tolled for the duration of Real Time's failure to reconvey the deed of trust under the doctrines of continuing violation or continuous accrual.  We do not address the application of these doctrines because we conclude that, even if they are applicable here, the statute of limitations for claims premised on the allegedly wrongful maintenance of the lien accrued when Rai resumed making withdrawals against the LoC, since Real Time's obligation to reconvey the deed of trust on the basis of the payoff ceased once Rai incurred further debt under the LoC.  Because Real Time's submissions demonstrate conclusively that Rai resumed drawing on the LoC more than four years prior to her filing of this action, the claims are now barred by the statute of limitations.

---

[4] In her opening brief, Rai seems to suggest these four claims are based on events occurring in the bankruptcy court, as well as the payoff.  As pleaded, the claims refer solely to the obligation arising out of the payoff, and our decision is based on that construction of the claims.

"The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues. [Citations.] Traditionally at common law, a 'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.' [Citation.] . . . [¶] To align the actual application of the limitations defense more closely with the policy goals animating it, the courts and the Legislature have over time developed a handful of equitable exceptions to and modifications of the usual rules governing limitations periods. These doctrines may alter the rules governing either the initial accrual of a claim, the subsequent running of the limitations period, or both. . . . [U]nder the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191–1192.)

Even if we were to assume Rai's causes of action did not accrue so long as Real Time allegedly wrongfully maintained the lien against her property, they necessarily would have accrued once Real Time's wrongful maintenance of the lien ceased. One way for the allegedly wrongful maintenance to end, plainly, was for Real Time to reconvey the deed of trust.

In addition, Real Time's alleged *wrongful* maintenance of the lien would have ceased if Rai made a new draw under the LoC, regardless of whether the deed of trust had been reconveyed. Under the terms of the LoC, Real Time was required to lend Rai money on demand through August 2010, up to the maximum credit limit. Rai could draw against the LoC merely by writing a check or using a credit card issued to her by Real Time in connection with the LoC. Under the terms of the deed of trust, the trustee had no obligation to reconvey the deed unless Rai had performed all of her obligations under the LoC. Not surprisingly, one of those obligations was to repay all debts incurred under the LoC. Accordingly, assuming Real Time had an obligation to reconvey the deed of trust once it had received the payoff, which satisfied Rai's outstanding debt under the LoC, that obligation ceased if Rai incurred additional debt under the line of credit. Because

8

Rai was no longer in the position of having performed her obligation under the LoC to pay all existing debts, the trustee no longer had an obligation to reconvey the deed of trust. For this reason, Real Time's allegedly wrongful maintenance of the lien following the payoff ceased if Rai made further draws on the LoC, and Rai's causes of action based on wrongful maintenance of the lien accrued upon the cessation of Real Time's wrongful maintenance.

Based on the documents submitted by Real Time in its request for judicial notice, it is clear Rai made additional draws against the LoC, thereby causing her various claims for wrongful maintenance of the lien to accrue. As noted above, Rai submitted a sworn schedule to the bankruptcy court upon commencement of the proceeding acknowledging an outstanding balance under the LoC of $300,000. This filing represents an admission by Rai of the existence and amount of the debt.[5] Further, Rai thereafter successfully sought a ruling from the bankruptcy court under Bankruptcy Code section 506 (11 U.S.C. § 506) that this debt was deemed unsecured because the collateral underlying the debt was insufficient. She is therefore judicially estopped from denying the existence of the debt. (See *Jogani v. Jogani* (2006) 141 Cal.App.4th 158, 179–180.)

Further, because those draws occurred more than four years prior to her filing of this action, the statute of limitations on her claims based on the alleged wrongful

---

[5] The trial court properly took judicial notice of the bankruptcy schedule under Evidence Code section 452, subdivision (d), which permits judicial notice of the records of state and federal courts. While we cannot take judicial notice of the truth of statements contained in a document merely because the document itself is a subject of judicial notice (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 265–266, disapproved on other grounds in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, fn. 13), the contents of the bankruptcy schedule were admissible under Evidence Code section 1220, which creates a hearsay exception for admissions of a party contained in a sworn statement. (*Estate of Anderson* (1997) 60 Cal.App.4th 436, 441.) Although Rai contends she "has always denied further advances," the bankruptcy schedule plainly demonstrates that further advances occurred. Rai acknowledged as much when she admitted in the original complaint in this action that Real Time extended to her "additional . . . credit" following the payoff. Because there is no suggestion Rai received any financing from Real Time other than the LoC, this additional credit must have come from the LoC.

maintenance of the lien expired prior to the filing. For purposes of this analysis, we assume the longest statute of limitations potentially applicable to her claims is the four-year statute applicable to her claim for breach of a written contract. (Code Civ. Proc., § 337, subd 1.) It unnecessary to decide the precise statute of limitations applicable to the two negligence claims, since Rai proposes no possible statute of limitations longer than four years.[6] (E.g., Code Civ. Proc., § 338, subd. (b) [three-year statute of limitations for trespass or injury to real property]; Code Civ. Proc., § 343 [four-year residual statute of limitations].) Rai's initial bankruptcy schedule noting a debt under the LoC was filed in March 2010. The motion for valuation of the lien was filed in June 2010. The present lawsuit was not filed until August 2014, more than four years after the submission of both the schedule and the motion. Accordingly, Real Time's submission established that Rai had made further draws on the LoC no later than a date more the four years prior to the filing of her lawsuit. The statute of limitations had therefore expired on her claims for wrongful maintenance of the lien by the time she filed this action.

## C. *Sanctions Against Rooney*

"[Code of Civil Procedure] [s]ection 128.7 requires that all pleadings filed with the court be signed by an attorney of a represented party, or, if the party is not represented by counsel, by the party. [Citation.] The signing of a filed pleading constitutes a certification by the person signing it that after a reasonable inquiry, the pleading (1) is not being presented for an improper purpose; (2) contains positions that are not frivolous; (3) alleges factual matter having evidentiary support; and (4) contains denials of factual allegations, which denials have evidentiary support. [Citation.] Based upon these requirements, the court, after proper statutory notice, may impose sanctions upon the attorneys, law firms, or parties who have improperly certified a pleading in violation of subdivision (b) of section 128.7." (*Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 919–920, fns. omitted.) For purposes of Code of

---

[6] The final claim based on wrongful maintenance, for an order cancelling the lien, was mooted when Rai made further draws on the line of credit, thereby removing any obligation of Real Time to reconvey the deed of trust as a result of the payoff.

Civil Procedure section 128.7 (hereafter section 128.7), a claim is legally frivolous if "it is 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' " (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 440.)  In making this judgment, courts must "apply an objective test of reasonableness, including whether 'any reasonable attorney would agree that [the claim] is totally and completely without merit.' " (*Id.* at p. 448.)  We review an award of sanctions under section 128.7 for abuse of discretion.  (*Peake*, at p. 441.)

Rooney contends his refiling of the claims for malicious prosecution and unfair business practices was not legally frivolous because the claims were supported by a good faith argument for the reversal of the law of preemption.  He cites *Graber v. Fuqua* (Tex. 2009) 279 S.W.3d 608 (*Graber*), in which the Texas Supreme Court held that a claim for malicious prosecution premised on the alleged wrongful filing of an adversary proceeding in bankruptcy court is not preempted by federal law.  (*Id.* at pp. 612, 617, 620.)  The *Graber* court therefore reached a legal conclusion directly contrary to that of the Ninth Circuit cases on which the bankruptcy court relied in finding Rai's claims preempted (e.g., *MSR Exploration, Ltd. v. Meridian Oil, Inc.* (9th Cir. 1996) 74 F.3d 910, 916) and California cases addressing the same issue (e.g., *Pauletto v. Reliance Ins. Co.* (1998) 64 Cal.App.4th 597, 606 [following *MSR*]).  Rooney argues he intended to urge the trial court to follow *Graber* in finding these claims not preempted by federal law.

Had Rai initially filed her malicious prosecution and unfair business practice claims in state court, as the plaintiff in *Graber* did, she might have had a good faith basis for asserting them, premised on the reasoning of *Graber*.  By the time Rooney filed the complaint, however, the issue of preemption had been rendered irrelevant.  Once the bankruptcy court had dismissed the claims, the doctrine of res judicata precluded refiling of the claims in state court, regardless of the merits of the bankruptcy court's ruling on preemption.  Claims coming within the scope of res judicata are barred even if the

judgment disposing of them was erroneous.[7] (*U.S. v. ITT Rayonier, Inc., supra*, 627 F.2d at p. 1004 ["The doctrine of res judicata does not depend on whether the prior judgment was free of error. [Citation.] If it did, judgments would lack finality, the very rationale of the rule of res judicata."].) Short of a demonstration of lack of jurisdiction, the bankruptcy court's decision could not be challenged in what amounts to a collateral attack in the superior court. (*In re Bailleaux* (1956) 47 Cal.2d 258, 262, disapproved on other grounds in *In re Russell* (1974) 12 Cal.3d 229, 235 [grounds for collateral attack on federal judgment are "limited"]; *Bank of America v. Jennett* (1999) 77 Cal.App.4th 104, 118.) If Rai was to challenge the bankruptcy court's preemption holding, her only avenue was an appeal of that decision in federal court.

In the absence of some good faith argument for avoiding application of the doctrine of res judicata with respect to the malicious prosecution and unfair business practice claims, the trial court did not abuse its discretion in finding Rooney's filing of them to have been legally frivolous. As discussed above, Rooney raised no argument against the application of res judicata to these claims in the opening brief. The arguments raised in the reply brief, again as discussed above, were wholly without merit and made without citation to relevant legal authority. We therefore have no basis for finding an abuse of discretion.

Rooney also argues the trial court erred in granting sanctions because Real Time failed to comply with the safe harbor provision of section 128.7, subdivision (c)(1). That subdivision "requires the party seeking sanctions to serve on the opposing party, without filing or presenting it to the court, a notice of motion specifically describing the sanctionable conduct. Service of the motion initiates a 21-day 'hold' or 'safe harbor' period. [Citations.] During this time, the offending document may be corrected or

---

[7] For this reason, we have not separately addressed Rai's argument in the opening brief that her "claim for malicious prosecution [should be] reinstated because the Bankruptcy Code does not preempt her claim." Under the doctrine of res judicata, the merits of the bankruptcy court's ruling are irrelevant (*U.S. v. ITT Rayonier, Inc.* (9th Cir. 1980) 627 F.2d 996, 1004), and we have no power to "reinstate" Rai's claims.

withdrawn without penalty. If that occurs, the motion for sanctions ' "shall not" ' be filed. [Citation.] [¶] . . . ' "The purpose of the safe harbor provisions is to permit an offending party to avoid sanctions by withdrawing the improper pleading during the safe harbor period. [Citation.] This permits a party to withdraw a questionable pleading without penalty, thus saving the court and the parties time and money litigating the pleading as well as the sanctions request." ' " (*Li v. Majestic Industrial Hills LLC* (2009) 177 Cal.App.4th 585, 590–591, fn. omitted.)

Rooney argues that within 21 days after filing of Real Time's motion for sanctions, Rai withdrew the original complaint and filed her first amended complaint, thereby satisfying subdivision (c)(1) of section 128.7. The first amended complaint, however, did not "withdraw[] or appropriately correct[]" the malicious prosecution and unfair business practice claims. (*Ibid.*) It merely amended one of the claims by adding a paragraph of legal argument addressing the claim for sanctions. Because the amended complaint neither withdrew nor materially amended the "challenged . . . claim[s]," Rooney failed to satisfy subdivision (c)(1). (*Ibid.*)

Rooney also argues the trial court failed to make necessary findings under section 128.7, subdivision (d), which states, in relevant part: "A sanction imposed for violation of subdivision (b) shall be limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated."[8] Subdivision (d) does not, however, require that findings to this effect be made. Rather, the trial court's findings under section 128.7 are governed by subdivision (e), which states: "When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed." Here, the trial court described in detail the conduct on which the sanctions order was based and explained the amount of sanctions was determined by the fees paid by Real Time for preparation and argument of

---

[8] Rooney's argument is phrased as a challenge to the court's findings, but he also seems to suggest the amount of the sanction constituted an abuse of discretion. To the extent Rooney intends to challenge the amount of sanctions, we find no abuse of discretion.

the sanctions motion.  The court noted that it declined to award the cost of fees incurred in connection with the demurrer because Real Time had not made a timely request for those fees, and also declined to award "an additional amount of sanctions of $10,000 solely to deter future bad faith or frivolous filings."  These findings are sufficient under section 128.7.  (*Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401, 1418 [approving essentially identical findings].)

### III.  DISPOSITION

The judgment of the trial court is affirmed.  Real Time may recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____
Margulies, Acting P.J.

We concur:


_____
Dondero, J.


_____
Banke, J.


A143787