[Civ. No. 10278.   Third Dist.   Mar. 9, 1962.]

Estate of HENRY J. RICCI, Deceased. ANTOINETTA RICCI, Claimant and Appellant, v. VIOLA MARIA ERMINIA RICCI, Claimant and Respondent.

Jones, Lane & Weaver and Neal W. McCrory for Claimant and Appellant.

Mazzera, Snyder and DeMartini for Claimant and Respondent.

SCHOTTKY, J.—This is an appeal from a decree determining heirship.

Henry J. Ricci died intestate on December 15, 1956. Both Viola Maria Erminia Ricci and Antoinetta Ricci claimed an interest in the estate as the surviving wife of Henry Ricci.

The court in its decree determining heirship found substantially as follows: that petitioner Viola Maria Erminia Ricci married the decedent, Henry J. Ricci, in Italy on the 7th day of July, 1907, and that said marriage was never terminated by divorce, annulment or otherwise, and continued continuously thereafter until decedent's death; that claimant Antoinetta Ricci was a party to a ceremonial marriage in good faith with the decedent, Henry J. Ricci, on the 29th day of July, 1919, in San Francisco, California; that the presumption of the validity of said ceremonial marriage has been overcome by adequate evidence of the continuance of the marriage of petitioner Viola Maria Erminia Ricci and the decedent; that there is no basis in the evidence for an estoppel against the claimant Viola Maria Erminia Ricci; that claimant Antoinetta Ricci is the surviving putative wife of said decedent; that it is not true that claimant Antoinetta Ricci is the surviving lawful wife of said decedent; that claimant Sister Mary Emilian is the daughter of the decedent and claimant Antoinetta Ricci; and that all of the property decedent had at the time of his death was acquired as the result of the joint efforts of decedent and Antoinetta.

The trial court decreed that one-half of the property should be awarded to Viola Maria and the other one-half to Antoinetta. Antoinetta has appealed. She contends that under the law of this state upon Henry's death intestate she became entitled to the entire estate, subject to administration, because all of the property was acquired by the joint efforts of her and Henry during the putative marriage. We have concluded that the decision of the trial court is supported by the evidence and the law.

Professor Burby (Professor of Law, University of Southern California) in Family Law for California Lawyers states at pages 359-360:

"Some difficulty is presented if conflicting claims are asserted by a legally recognized spouse and a putative spouse.

Of course the claim of a putative spouse must be limited to property acquired during the continuance of that relationship. It seems obvious that one-half of the property in question belongs to the putative spouse. The other half belongs to the legal community (husband and legally recognized spouse) and should be distributed as any other community property under the same circumstances.

''A putative marriage was involved in *Estate of Krone,* (1948) 32 [*sic*] [83] C.A.2d 766, 189 P.2d 741. The property in question was acquired during the continuance of this relationship and was claimed by the putative wife after the death of the husband. Her claim was resisted by issue of a former marriage. The court held that all of the property in question passed to the putative spouse by force of Probate Code section 201, which provides: 'Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse . . .' The conclusion reached by the court seems to be a proper one. The claimants (husband's issue by a former marriage) would be entitled to recover only on the theory that the property in question constituted a part of the husband's separate estate. But the property in question was not of that type.

''A much more difficult problem would be raised if a claim were asserted by a legally recognized spouse. That was the situation involved in *Union Bank & Trust Co.* v. *Gordon,* (1953) 116 C.A.2d 681, 254 P.2d 644. The deceased husband devised and bequeathed one-half of the property acquired during the putative marriage to his putative wife, Elsie, and one-half to his children. The legally recognized wife claimed a right to share in his estate. This claim was denied. In the first place, the court, in reliance upon *Estate of Krone,* held that the legal wife did not have an interest. In the second place, it held that she was estopped to deny the validity of the putative marriage because after her purported divorce (it was void because secured by the husband in Nevada and without having established a sufficient domicile) she purported to enter into another marriage. In the absence of the argument that she was estopped to deny the validity of the husband's putative marriage, there is no sound reason for excluding the legally recognized spouse from her share in acquisitions made by her husband during a putative marriage. It is true that one-half of the property belongs to the

putative spouse but the other half belongs to the legally recognized community and there is no basis upon which the legally recognized spouse can be excluded from a proper share therein.''

Barbara Armstrong in her work on California Family Law states on this subject at page 870 that each of the two ''widows'' in the absence of the other is entitled under the case law to the entire estate. She concludes that an equitable and sensible conclusion would be to award to the putative wife the half to which she presumably contributed and to award to the deserted wife the half over which the husband had testamentary control. This result is the law in Texas (*Morgan* v. *Morgan,* 1 Tex.Civ.App. 315 [21 S.W. 154]) and Louisiana (*Abston* v. *Abston,* 15 La.Ann. 137; *Waterhouse* v. *Star Land Co.,* 139 La. 177 [71 So. 358]) on similar facts.

The case of *Union Bank & Trust Co.* v. *Gordon, supra,* in which it was held that the legal wife was not entitled to share in the estate of her deceased husband was correctly decided on the basis of estoppel, but, as we analyze the authorities, the legal wife could not have been excluded without the estoppel. To do so could penalize an innocent wife who had been deserted by her husband, and would be contrary to section 201 of the Probate Code which states that ''Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; . . .'' Here there are no facts in the record justifying the application of the doctrine of estoppel.

Appellant makes the further contention that the evidence is insufficient to overcome the presumption of the validity of the second marriage. ''It is well established that when a person has entered into two successive marriages, a presumption arises in favor of the validity of the second marriage, and the burden is upon the party attacking the validity of the second marriage to prove that the first marriage had not been dissolved . . . or had not been annulled at the time of the second marriage. [Citations.] That burden is sustained if the evidence, in the light of all reasonable inferences therefrom, shows that the first marriage was not so dissolved or annulled.'' (*Estate of Smith,* 33 Cal.2d 279, 281 [201 P.2d 539].)

There is no merit in this contention. The testimony of respondent Viola Maria in her answers to written interrogatories was to the effect that she did not herself obtain a divorce or annulment from decedent. Appellant testified

that she first met the decedent in 1919, sometime before Easter. On May 15, 1919, the decedent filed a complaint for divorce from respondent in the superior court of San Francisco County, which complaint was dismissed by court order for lack of prosecution 38 years later. Two and one-half months after this divorce complaint was filed the decedent and appellant obtained a marriage license in which the decedent stated that he was a widower. The same day, July 29, 1919, the decedent and appellant went through a marriage ceremony outside the Catholic Church although both were Catholics. If the decedent had obtained a divorce or annulment from respondent prior to May 15, 1919, he would not have filed the complaint for divorce on that date. If he had done so after May 15, 1919, and before July 29, 1919, he would not have felt obligated to state in his marriage license that he was a widower, nor in all likelihood would he have been married by a justice of the peace. The evidence, and the inferences that could reasonably be drawn therefrom, was sufficient to support the finding of the trial court that the presumption of the validity of the second marriage had been overcome.

Equally without merit is the contention of appellant that the evidence that respondent Viola Maria did not obtain a divorce or annulment from the decedent prior to his subsequent marriage was improperly received. Interrogatories were sent to the United States Consul in Florence, Italy. The commission of the superior court empowered the consul to swear a person to act as an interpreter. At the foot of each set of interrogatories the following signed statement appears: ''Examination taken, reduced to writing, subscribed by the witness and by the sworn interpreter, and sworn to by the witness . . . before Ruth E. Wagner [signature], Vice Consul of the United States of America.'' Appellant contends that the record is insufficient to show the interpreter was sworn as a witness to accurately interpret from the English language into the Italian language and vice versa. The interrogatories sufficiently show that the interpreter was sworn.

In conclusion we agree with the following statement of the learned trial judge in his memorandum opinion: ''Yet under the case law of this state it seems clear that each of the two widows absent of the other is entitled to the whole estate. Thus, in a contest between them it would seem both logical and equitable to divide the property equally, awarding the putative wife the half to which she contributed and giving

to the legal but deserted wife the half over which the husband normally has testamentary control.''

The decree appealed from is affirmed.

Peek, P. J., and Pierce, J., concurred.

A petition for a rehearing was denied April 3, 1962, and appellant's petition for a hearing by the Supreme Court was denied May 2, 1962. Schauer, J., was of the opinion that the petition should be granted.