[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 438 
OPINION
Petitioner and appellant Orange Pierson (Pierson) appeals from the denial of his petition to determine distribution rights in the estate of *Page 439 
Jessie Lee Anderson (decedent). (Prob. Code, § 11700) The primary issue is whether the trial court correctly applied the doctrine of estoppel to prevent Pierson, an undivorced bigamous spouse, from asserting his inheritance rights as a "surviving spouse" against the estate of his legally recognized first spouse who died intestate. We affirm, finding Pierson was properly estopped from claiming spousal inheritance rights.
 FACTS
The decedent died intestate on June 18, 1996. On December 4, 1996, Pierson filed a petition to determine distribution rights, by which he sought a judicial declaration that he was the decedent's "surviving spouse," which would entitle him to a one-half distributive share of decedent's estate pursuant to Probate Code section 6401, subdivision (c)(2)(B). The estate's administrator filed objections to Pierson's petition.
Pierson's petition was decided by the court on the basis of documentary evidence in lieu of testimony and oral argument. The documentary evidence shows the following: The decedent and Pierson were married in 1955 in Contra Costa County. They lived together for approximately three years and separated in 1958. No children were born of this marriage. In the underlying proceedings, Pierson averred, "We never filed for a divorce with the Court or ever obtained a divorce. Further, there has never been any order of any court terminating my marital property rights in my marriage to [decedent]."
In the underlying proceedings, Pierson submitted declarations from decedent's mother, Nancy Williams, and a number of decedent's friends indicating that during her lifetime, the decedent openly disclosed that she and Pierson had never obtained a divorce. He also submitted affidavits attesting to the fact that the divorce records were searched in the counties where the parties had resided, San Francisco County, Alameda County, and Contra Costa County, but no evidence was discovered that the marriage was ever legally dissolved.
Shortly after Pierson and the decedent separated in 1958, Pierson began cohabiting with the woman he would eventually marry, Daisy Lee Pierson (hereafter solely for convenience, Daisy). The first of their five children was born on June 10, 1958. They married on February 1, 1993. In Pierson's sworn affidavit of application for marriage license, he stated that he had not been previously married. In the underlying proceeding Pierson submitted a declaration explaining that he made this "obviously false" statement because he had been physically separated from decedent for 35 years and he desired to prevent embarrassment to everyone concerned. During their relationship, Pierson and Daisy acquired real property as husband and wife. They were still married and residing together at the time this matter was at issue. *Page 440 
In 1978, the decedent married Clarence Anderson, Jr. The decedent stated in her marriage license application that she was previously divorced in 1958 in San Francisco County. Clarence Anderson, Jr. died on January 16, 1983, and decedent never remarried. She died without any children or siblings, and with her mother as her sole heir. The primary asset in decedent's estate consists of real property in Oakland which was acquired with Clarence Anderson, Jr., and was community in character.[1]
(1) In contested probate matters where a jury is waived the court is required, as in civil actions, to make appropriate findings of fact on all issues presented to it. (Estate ofMcCormack (1969) 2 Cal.App.3d 492, 500 [82 Cal.Rptr. 651].) "It is of course settled that in a probate matter findings of fact may be included in the order or decree and need not be set forth in a separate document. [Citation.]" (Estate of Ruben
(1964) 224 Cal.App.2d 600, 607 [36 Cal.Rptr. 752]; Estate ofMcCormack, supra, 2 Cal.App.3d at p. 500.) We have before us the court's findings that "ORANGE PIERSON is estopped from denying the statement made on February 1, 1993, in the Affidavit of Application for Marriage license that his marriage to Dai[s]y Lee Pierson was his first marriage. The court finds that ORANGE PIERSON is not the surviving spouse of decedent." Pierson appeals, claiming he is entitled to be recognized as the surviving spouse of the deceased with a concomitant right to a distributive share of the decedent's estate.
 DISCUSSION
Pierson claims the court erred in its application of the doctrine of estoppel to this case. (2) "The foundation of estoppel is justice and good conscience. Estoppel applies to prevent a person from asserting a right where his conduct makes it unconscionable for him to assert it; it is a bar to stating the truth when it would be unfair to state it." (Estate ofHafner (1986) 184 Cal.App.3d 1371, 1395 [229 Cal.Rptr. 676].) Estoppel applies "to prevent a person from asserting a right . . . where, because of his conduct, silence, or omission, it would be unconscionable to allow him to do so." (Brown v. Brown
(1969) 274 Cal.App.2d 178, 188 [82 Cal.Rptr. 238].) It prevents a person from acting in a manner inconsistent with his former position or conduct to the injury of another. (Id. at p. 189.)
(3) Generally, the determination of estoppel is a factual question; and the finding of the trier of fact is binding on the appellate court. (Conservatorship of Kevin M. (1996) 49 Cal.App.4th 79,92 [56 Cal.Rptr.2d 765]; In re *Page 441 Marriage of Dekker (1993) 17 Cal.App.4th 842, 850
[21 Cal.Rptr.2d 642]; County of Sonoma v. Rex (1991) 231 Cal.App.3d 1289,1296 [282 Cal.Rptr. 796].) However, when the facts are undisputed and only one inference reasonably may be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling. (Platt Pacific, Inc. v. Andelson (1993)6 Cal.4th 307, 319 [24 Cal.Rptr.2d 597, 862 P.2d 158]; Mehl v.People ex rel. Dept. Pub. Wks. (1975) 13 Cal.3d 710, 715-716
[119 Cal.Rptr. 625, 532 P.2d 489]; Crumpler v. Board ofAdministration (1973) 32 Cal.App.3d 567, 581 [108 Cal.Rptr. 293] .) The facts material to a resolution of this case are undisputed; therefore, we independently review whether the doctrine of estoppel was properly invoked by the trial court to preclude Pierson from asserting inheritance rights in the decedent's estate.
(4) As an evidentiary matter, Pierson argues that in applying estoppel, the court erroneously relied on his averment in his application for the marriage license to Daisy that he had never been married before. Pierson asserts that the trial court erroneously overruled his objection that this statement constituted inadmissible hearsay. We disagree. Evidence Code section 1220 creates an exception to the hearsay rule for an admission by a party.[2] For such a statement to be admissible against a party as an admission, the statement must assert facts which would have a tendency in reason to prove some portion of the proponent's defense, or to rebut some portion of the party declarant's cause of action. (Carson v. Facilities DevelopmentCo. (1984) 36 Cal.3d 830, 849 [206 Cal.Rptr. 136,686 P.2d 656].) When measured against this standard, we find that the sworn statements made by Pierson in his application for a marriage license for his second marriage were properly admitted under Evidence Code section 1220 and that the statements were indeed relevant to whether or not he should be awarded heirship rights as decedent's surviving spouse. In so holding, we note several cases involving multiple spousal claimants in heirship proceedings have cited information contained in applications for marriage licenses. (See Estate of Atherley (1975) 44 Cal.App.3d 758,766 [119 Cal.Rptr. 41, 81 A.L.R.3d 97], disapproved on other grounds in Marvin v. Marvin (1976) 18 Cal.3d 660,665 [50 Cal.App.3d 84, 134 Cal.Rptr. 815, 557 P.2d 106];Estate of Ricci (1962) 201 Cal.App.2d 146, 151 [19 Cal.Rptr. 739] .)
(5a) Further, the law supports the ruling of the trial court that Pierson was estopped to deny his sworn statement that his marriage to Daisy was his first marriage. (6) "[W]hen a person with the capacity of reading and *Page 442 
understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents and is estopped from saying that its explicit provisions are contrary to his intentions or understanding [Citations]." (Larsen v. Johannes
(1970) 7 Cal.App.3d 491, 501 [86 Cal.Rptr. 744]; Anderson v.Savin Corp. (1988) 206 Cal.App.3d 356, 363, fn. 1 [254 Cal.Rptr. 627].) This species of estoppel is denominated "`"quasi
estoppel"'" and "`"is based upon the principle that one cannot blow both hot and cold, or that one `with full knowledge of the facts shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another.' [Citations.]"'" (Estate of Davis (1940) 38 Cal.App.2d 579, 584
[102 P.2d 545], as quoted in Brown v. Brown, supra, 274 Cal.App. 2
d at p. 189, original italics.)
(5b) We believe this case contains all of the elements of "quasi estoppel." Pierson should not be allowed to "blow hot and cold" by renouncing his marriage to decedent by swearing that the marriage never existed in order to remarry and then, after a 38-year separation from decedent, seek a judicial declaration that he is decedent's surviving spouse for the purpose of inheriting an interest in assets acquired during the deceased's second marriage. Since Pierson procured the marriage license to marry Daisy by asserting he had never been married before, he is now estopped to contest the validity of this statement.
Nor is there merit to Pierson's statement that the trial court's "ruling was only based on [his] marriage application statement that he had not previously been married" and that if the court "[h]ad not admitted evidence of the marriage application statement, it could not have ruled that [he] was estopped based on said statement." The bar which the trial court imposed upon Pierson's claim of heirship to decedent's estate was not based on a simple factual misrepresentation made in a legal document but instead was based upon Pierson's course of conduct during his 38-year separation from decedent during which time both he and decedent entered into marriages with other people. A review of the record reveals there is ample evidence, aside from that claimed to be erroneously admitted, barring Pierson on the grounds of estoppel from asserting surviving spousal inheritance rights from decedent's estate.
Estoppel has been applied in cases where the estopped party "slept on her property rights year in and year out and who, by her silence and acquiescence, allowed the rights of a third party to intervene." (Brown v. Brown, supra, 274 Cal.App.2d at p. 190.) Brown involved an invalid foreign divorce. The first wife waited almost 30 years before asserting a claim against property accumulated by Mr. Brown and his second wife. In the interim, she *Page 443 
acquiesced in her husband's use of the second wife's separate property to build up the purported community property, she accepted monthly support payments from him, and she did not challenge the relationship between her husband and his second wife. The court held her estopped to claim a community property interest, explaining estoppel applies "to prevent a person from asserting a right which has come into existence by contract, statute or other rule of law where, because of his conduct, silence, or omission, it would be unconscionable to allow him to do so." (Id. at p. 188.)
Other cases illustrate that estoppel has consistently been applied to prevent a spouse who has remarried in reliance on a divorce decree that is invalid due to a lack of jurisdiction or other defect from asserting the invalidity of the divorce after the first spouse's death in attempting to claim inheritance rights. For example, in Hensgen v. Silberman (1948) 87 Cal.App.2d 668
[197 P.2d 356], the decedent's first wife was estopped from questioning a foreign divorce's validity for the purpose of sharing in the property accumulated during the decedent's second marriage. The court noted the first wife took no action until after decedent's death to assert the invalidity of the divorce and that she, in fact, had also remarried in reliance upon it. The court stated that "upon the simplest principles of equitable estoppel," the decedent's first wife could not now be heard to question the validity of the foreign divorce for the sole purpose of sharing in the property acquired by the decedent and his second wife during the years they lived together as husband and wife. (Id. at p. 674; see also Union Bank Trust Co. v.Gordon (1953) 116 Cal.App.2d 681 [254 P.2d 644]; Estate ofShank (1957) 154 Cal.App.2d 808 [316 P.2d 710]; Estate ofEdgett (1961) 188 Cal.App.2d 700 [10 Cal.Rptr. 552].)
Pierson, however, raises a factual distinction which he claims dictates a different result. Unlike the above cited cases, in the instant case there was no divorce, invalid or otherwise, intervening between Pierson's and decedent's first and second marriages. Nevertheless, we believe this case is controlled by analogous principles. The principles laid down in the cases cited illustrate that if a wife or a husband enters into a subsequent marriage with another person during the lifetime of the estranged spouse, he or she will be estopped from claiming the rights of a lawful spouse, including the right to inherit if the estranged spouse dies intestate. Pierson admitted in his own affidavit that he entered into a marriage with Daisy in 1993 without obtaining a divorce from the decedent, from whom he had been separated for 35 years. Pierson's marriage to Daisy formalized a union that had produced five children and had resulted in the acquisition of community property. Although apprised of the vital facts, he never interfered in or challenged decedent's marriage to Clarence Anderson, Jr. Under these circumstances, Pierson's conduct constituted a complete repudiation of his marital status as decedent's husband, *Page 444 
and he is now estopped from seeking to resurrect that status in order to establish a spousal right of heirship to decedent's estate.
Pierson relies on Estate of Scott (1949) 90 Cal.App.2d 21
[202 P.2d 357] in support of his contention that estoppel should not be applied in this case. That case held that a husband's infidelity during his deceased wife's lifetime did not prevent him from collecting his inheritance from her estate. The court reasoned, "[S]ince the state Legislature has not seen fit to deprive a spouse who is guilty of marital misconduct of being the heir of his or her deceased spouse, the courts may not place any such restriction upon inheritance." (Id. at p. 23.) But there was no bigamous marriage by the husband in the Scott case. We hold that under the facts before us, where both parties knew the pertinent facts and over a long passage of time remarried and conducted their affairs as if their marriage was dissolved, principles of equity demand that Pierson be estopped from asserting rights in decedent's estate.
 DISPOSITION
The judgment is affirmed.
Kline, P.J., and Haerle, J., concurred.
[1] Rochelle Anderson, the daughter of Clarence Anderson, Jr., is entitled to receive the share of real property of the estate attributable to her father under Probate Code section 6402.5 if there is no surviving spouse. She is a party to these proceedings and has filed a brief in support of the trial court's ruling.
[2] Evidence Code section 1220 provides: "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity." *Page 445