Filed 11/26/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| C.C., | 2d Civ. No. B331558 |
| | (Super. Ct. No. 21FL-0553) |
| Plaintiff and Appellant, | (San Luis Obispo County) |
| v. | |
| L.B. et al., | |
| Respondents. | |

More than a decade after consenting to terminate his parental rights to a child born from his sperm donation, appellant C.C. petitioned the family court to establish himself as a presumed father under Family Code section 7611, subdivision (d)[1] and as a third parent under section 7612, subdivision (c). He contends the trial court's order granting respondents' motion to quash his amended petition to establish a parental relationship is contrary to decades of custody and parenting law, requiring reversal and remand. He describes this appeal as crucial to the protection of non-traditional families in California, asserting

---

[1] Further statutory references are to the Family Code.

there is no evidence to support a finding that he relinquished his right to enforce a legal parenting relationship and that his post-adoption conduct for over a decade entitles him to parenting rights. He argues the Legislature's 2013 Family Code amendments, which authorize courts to find a child may have more than two parents, "were intended to provide parents in [appellant's] position a path to establish their relationships with their children."

The questions we answer are as follows:

(1) Does appellant have standing under section 7630 subdivision (b)[2] to seek presumed parent status under section 7611, subdivision (d)[3] and third parent status under section 7612, subdivision (c)[4] despite the fact his parental rights were terminated?

---

[2] Section 7630, subdivision (b) states: "Any interested party may bring an action at any time for the purpose of determining the existence or nonexistence of the parent and child relationship presumed under subdivision (d) or (e) of Section 7611."

[3] Section 7611, subdivision (d) provides that a presumed parent is one who "receives the child into *their* home and openly holds out the child as *their* natural child." (Italics added.)

[4] Section 7612, subdivision (c) states: "In an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child. In determining detriment to the child, the court shall consider all relevant factors, including, but not limited to, the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed

(2)  Are respondents estopped from relying on appellant's consent to the child's adoption and the adoption order terminating his rights if respondents induced him to donate his sperm and consent to the adoption by promising him substantial and continuing contact with the child?

(3)  Does appellant have standing under section 3041[5] to seek visitation absent a right to establish legal parentage?

We answer "no" to all three questions and will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The facts set forth are undisputed.  Much of the factual and procedural background of this case is not relevant to the legal questions presented.  We assume all appellant's allegations of post-adoption contact with N. are true.

Respondents L.B. and R.B. are a married lesbian couple who sought to conceive a child via in vitro fertilization (IVF).  They chose appellant as their sperm donor.  R.B. and appellant executed a written contract identifying appellant as "donor" and R.B. as "recipient" (the donor agreement).  L.B. was not a party to this contract.

Pursuant to the donor agreement appellant agreed to provide his semen for artificial insemination with the "clear understanding . . . he would not demand, request, or compel any guardianship or custody with any child born from the artificial insemination procedure[,] . . . that he fully understands that he would have no paternal rights whatsoever with said child," that

_____

that role for a substantial period of time.  A finding of detriment to the child does not require a finding of unfitness of any of the parents or persons with a claim to parentage."

[5] Section 3041 governs nonparent requests for custody.

3

R.B. "and her legal spouse will pursue second parent adoption for the child(ren) and [appellant] will waive his parental rights before the courts at that time," that appellant's "waivers shall prohibit any action on his part for custody or guardianship in any future situations, including the event of [R.B.'s] disability or death," that the agreement was made "voluntarily and freely, of [their] own choice, without any duress of any kind whatsoever[,] . . . that each party has been advised to secure the advice and consent of an attorney of [their] own choosing, and that each party understands the meaning and significance of each provision of this agreement." (Bold omitted.)

The donor agreement set forth the "intent of the parties" "to create an extended family for our child(ren) and for ourselves . . ." and "that both parents will be known and have substantial and continuing contact with the child(ren)." It assured appellant "substantial and continuing contact with the child(ren) . . . [consisting of] weekly visitation of up to 24 hours . . . and an annual 'vacation time' of two consecutive or non-consecutive weeks per calendar year[,] . . . at a time and place that is agreeable to [R.B.]"

Appellant provided his sperm to a licensed physician. A reproductive health center created an embryo using R.B.'s ovum and appellant's sperm. The embryo was implanted by a physician, resulting in R.B.'s pregnancy and N.'s birth. Hospital records identify respondents as N.'s parents and N. was given L.B.'s last name. Within a month of N.'s birth, L.B. petitioned for stepparent adoption. R.B. and appellant signed state forms preserving R.B.'s parental rights and waiving appellant's. Appellant gave up "all my rights of custody, services, and earnings of said child." (Italics omitted.) The adoption order was

4

entered three months later.  N.'s birth certificate identifies L.B. and R.B. as N.'s parents.  Appellant did not request an order for postadoption visitation and none was ordered.  He did not attempt to withdraw his consent nor seek to vacate, set aside, or nullify the adoption.

For the first eleven years of N.'s life, appellant exercised the visitation contemplated in the donor agreement.  Nearing her twelfth birthday, appellant was informed N. no longer wanted to visit him.  After efforts to resume visitation failed, appellant petitioned to establish a parental relationship and request joint custody and visitation.  We consider only the operative amended petition.

Appellant alleged he is a biological parent, a section 7611, subdivision (d) presumed parent, a section 7612, subdivision (c) third parent, and he requested custody and visitation orders under sections 3040, subdivision (e)[6], 3041 (nonparent custody), and 3100[7] and based upon "historical parenting and his existing relationship" with N.  He alleged respondents were equitably estopped from claiming appellant's consent to the adoption precludes him from establishing a parental relationship with N., and that "the terms of the [donor agreement] must be enforced as to [his] relationship and parenting time with [N.]"

---

[6] Section 3040, subd. (e) states:  "This section establishes neither a preference nor a presumption for or against joint legal custody, joint physical custody, or sole custody, but allows the court and the family the widest discretion to choose a parenting plan that is in the best interest of the child, consistent with this section."

[7] Section 3100 governs parents' visitation rights.

Respondents moved to quash his amended petition.  (Cal. Rules of Court, Rule 5.63, subd. (b).[8])  Appellant's counsel requested a trial on the issues of parentage and standing.  The trial court heard argument and took the matter under submission.  In written findings and orders the court granted the motion to quash in part, finding the donor agreement allowed visitation privileges but not parental rights.  It also found appellant's voluntary consent to termination of his parental rights was final, irrevocable, and precluded standing.[9]

The trial court determined "[a]s a matter of law, the termination of [appellant's] parental rights as part of [the donor] agreement and the [consent to] adoption prevent [appellant] from having standing to assert parentage."  (Bold omitted.)  The court explained that appellant's signature on the consent to adoption "[a]s a matter of law, . . . emphasizes that [appellant] is excluded from a claim of parentage," and that "the 'final and irrevocable' language in the [donor] agreement means that the termination of parental rights was final and irrevocable."  The court did not reach a decision regarding estoppel because it understood appellant sought visitation pursuant to a postadoption contact

---

[8] Rule 5.63, subdivision (b) authorizes a motion to quash based upon lack of legal capacity to sue.

[9] Appellant asserts this order improperly overruled an earlier interim order made by a different judicial officer.  But a trial court has "inherent authority" to change interim orders "at any time prior to the entry of judgment."  (*Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1156; Code Civ. Proc., § 128, subd. (a)(8).)  Moreover, Judge Guerrero's written ruling demonstrates due consideration was given to the previously denied motions.  (*Darling* at p. 1157.)

6

agreement (PACA) and believed the estoppel argument was relevant only to that claim. Instead, the court set a further hearing on the issue. However, at that hearing, appellant conceded the donor agreement was not a PACA.

The court issued further orders, confirming its prior ruling, granting the motion to quash in full, and denying appellant's motion for new trial.

DISCUSSION

*Section 8617 Precludes Appellant Establishing Parentage Under Any Theory*

Appellant contends the trial court erred in denying him the right to establish the existence of a parent and child relationship with N. pursuant to sections 7630, subdivision (b), 7611, subdivision (d), and 7612, subdivision (c). Respondents argue, and we agree, this appeal turns on whether the trial court erred in dismissing the amended petition for lack of standing pursuant to section 8617. Review of a standing ruling is a question of law and statutory interpretation requiring de novo review. (*Librers v. Black* (2005) 129 Cal.App.4th 114, 124.) We may affirm the trial court even if its rationale was wrong. (*Daar & Newman v. VRL International* (2005) 129 Cal.App.4th 482, 491.)

Adoption did not exist at common law. Its associated rights, duties, and obligations are entirely statutory. (*Adoption of Kay C.* (1991) 228 Cal.App.3d 741, 750, citing *In re Estate of Taggart* (1923) 190 Cal. 493, 498.) Section 8617 has remained substantively unchanged since originally enacted as part of the Civil Code in 1872. It provides, "the existing parent or parents of an adopted child are, from the time of the adoption, relieved of all parental duties towards, and all responsibility for, the adopted child, and have no right over the child." (§ 8617, subd. (a);

7

*Younger v. Younger* (1895) 106 Cal. 377, 379; *Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 426 (*Sharon S.*).)

"'"The main purpose of adoption statutes is the promotion of the welfare of children . . . by the legal recognition and regulation of the consummation of the closest conceivable counterpart of the relationship of parent and child."'" (*Sharon S.*, *supra*, 31 Cal.4th at p. 454.) "'The rule is that the adoption statutes are to be liberally construed with a view to effect their objects and to promote justice. Such a construction should be given as will sustain, rather than defeat, the object they have in view.'" (*Id.* at p. 426.)

Less than one month after N. was born appellant signed a consent to adoption stating "I, [appellant], being the parent of [N.], do hereby give my full and free consent to the adoption of said child by [L.B.], the petitioner herein, it being fully understood by me that with the signing of this document my consent may not be withdrawn except with court approval, and that with the signing of the order of adoption by the court, I shall give up all my rights of custody, services, and earnings of said child, and that said child cannot be reclaimed by me." (Italics omitted.) An adoption home study was conducted, recommending adoption of N. by L.B. The court found adoption to be in N.'s best interest and so ordered.

Appellant argues there is "nothing in any of [the adoption] statutes, nor in any case cited by the [respondents] or the trial court or known to [appellant], which holds that a stepparent adoption somehow neutralizes the statutory scheme enacted by S.B. 274." Senate Bill 274, enacted three years after appellant gave up his parental rights and consented to N.'s adoption, partly amended the Family Code. It authorized a court to find a child

8

has more than two parents "if the court finds that recognizing only two parents would be detrimental to the child." (Stats. 2013, ch. 564, §6.5.) It also amended section 8617, reorganizing the original text into subsection (a) and adding subsection (b) to provide that "[t]he termination of the parental duties and responsibilities of the existing parent or parents . . . may be waived if both the existing parent or parents and the prospective adoptive parent or parents sign a waiver at any time prior to the finalization of the adoption." (Stats. 2013, ch. 564, §7; see also § 8617, subds. (a) and (b).)

Section 8617, subdivision (a) remains unambiguous: "the existing parent or parents of an adopted child are, from the time of the adoption, relieved of all parental duties towards, and all responsibility for, the adopted child, and have no right over the child." Subdivision (b) does not apply because the donor agreement did not purport to waive termination of appellant's parental rights. Rather, the donor agreement repeatedly states appellant agrees to terminate his parental rights, understands he has no parenting rights whatsoever, that he relinquishes and releases any and all rights he has to bring a suit establishing paternity, and understands he is prohibited from bringing "any action . . . for custody or guardianship in any future situations, including the event of [R.B.'s] disability or death."

None of the cases appellant relies on concern a person whose parental rights were terminated. Our research has not revealed any cases where someone whose parental rights were terminated was later found to have standing to pursue custody under any theory, even an ongoing parent-child relationship. The closest is a dependency case holding that if the law is interpreted to allow a person whose parental rights have been terminated to

9

later seek presumed parent status, the statutes governing adoption "would be meaningless and the goals of stability and finality . . . would be substantially undermined." (*In re Cody B.* (2007) 153 Cal.App.4th 1004, 1011.) We believe this rationale is equally applicable here.

Appellant argues there is "no evidence to support the finding that [he] relinquished his right to enforce his legal right to contact with N. . . . because he did not do so." We disagree. His signature on the consent to adoption and the resulting adoption order sufficiently supports finding he permanently relinquished his right to contact with N. His claim these issues are crucial to the protection of nontraditional families is an attempt to revive his "'parental rights under a different theory.'" (*In re Cody B.*, *supra*, 153 Cal.App.4th at p. 1012.) None of the cases or statutes he cites provide exceptions to section 8617. There is simply no law permitting designation as a legal parent after the termination of parental rights and a child's adoption. (*Cody B.*, at p. 1013.)

During oral argument, appellant claimed for the first time that he has standing to pursue custody under section 7630 subdivision (f).[10] "[W]e need not consider any issue which, although raised at oral argument, was not adequately raised in the briefs." (*Sunset Drive Corp. v. City of Redlands* (1999) 73 Cal.App.4th 215, 226; see also *Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 653 ["An appellant abandons an issue by failing

---

[10] Section 7630, subd. (f) states: "A party to an assisted reproduction agreement may bring an action at any time to establish a parent and child relationship consistent with the intent expressed in that assisted reproduction agreement."

to raise it in the opening brief"].)  Even if we exercise our discretion to consider this claim (*Sanchez v. Truck Ins. Exchange* (1994) 21 Cal.App.4th 1778, 1787 [reviewing court may exercise its discretion to consider a pure question of law based on undisputed facts]), 7630, subdivision (f) does not create standing for the same reasons he does not have standing under any of the other code sections he previously invoked:  the adoption order was a final judgment permanently terminating his parenting rights and conclusively determining the nonexistence of a parent-child relationship.  (§ 8617, subd. (a); see also § 7636 ["The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes. . ."].)

*Equitable Estoppel Does Not Apply*

"Generally, the determination of estoppel is a factual question; and the finding of the trier of fact is binding on the appellate court.  [Citations.]  However, when the facts are undisputed and only one inference reasonably may be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling." (*Estate of Anderson* (1997) 60 Cal.App.4th 436, 440-441.)  The facts relevant to this appeal are undisputed; no factual determinations were needed or made by the trial court. Accordingly, we review de novo the trial court's finding that equitable estoppel does not apply.  (*Ibid*.)

Appellant contends equitable estoppel bars respondents from relying on his consent to the adoption as a basis to deny him the "benefits" of the donor agreement.  To the extent he contends those "benefits" include his right to establish himself as a legal parent, we disagree.  The donor agreement did not give appellant any right to legal parentage.  In fact, it did the opposite.  The

11

agreement states appellant "would not demand, request, or compel any guardianship or custody," "acknowledges that he fully understands that he would have no paternal rights whatsoever," he "relinquishes and releases any and all rights he . . . may have to bring a suit to establish paternity," the relinquishment of his rights "is final and irrevocable," "his waivers shall prohibit any action on his part for custody or guardianship in any future situations," and "any future contact [he] may have with any child(ren) that result(s) from the artificial insemination procedure in no way alters the effect of this agreement." "'[W]hen a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents and is estopped from saying that its explicit provisions are contrary to his intentions or understanding.'" (*Estate of Anderson, supra,* 60 Cal.App.4th at pp. 441-442.)

Relying on appellant's consent and the adoption home study, the adoption court found it was in N.'s best interest to terminate appellant's rights for N.'s adoption by L.B. and so ordered. Appellant concedes the adoption was in N.'s best interest and maintains he is not challenging the adoption order. But he is. The adoption order terminated his parental rights, and his current petition seeks to establish parental rights. California law does not allow him to attack the validity of an order he consented to more than a decade ago. Permitting such an attack would ""''trifle with the courts,''"" (*Kristine H. v. Lisa R.* (2005) 37 Cal.4th 156, 166) and infringe on public policy favoring "expediency and finality" in adoptions. (*In re Clarissa H.* (2003) 105 Cal.App.4th 120, 125, citing *Adoption of Alexander S.* (1988) 44 Cal.3d 857, 868.)

12

*Appellant Lacks Standing to Initiate*
*an Action for Visitation*

Even having played an important fatherly role for most of N.'s life, appellant remains a legal nonparent. Except for grandparents' right to petition for visitation under section 3104, a nonparent has no standing to initiate an action for visitation under the Family Code. (*Erika K. v. Brett D.* (2008) 161 Cal.App.4th 1259, 1269.)

We are not unsympathetic to appellant's position. Our laws have continued to evolve to allow for many types of legally recognized parents and families. Unfortunately for appellant, those laws do not allow him or us to ignore the consequences of a final adoption order, which gave N.'s legal parents, not the courts, the right to decide whether and with whom she spends her time.

## DISPOSITION

Judgment is affirmed. Respondents shall recover their costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

CODY, J.

We concur:

GILBERT, P. J.          BALTODANO, J.

13

Gayle L. Peron, Judge
Matthew G. Guerrero, Judge
Superior Court County of San Luis Obispo

_____

Kirker Wright Law Group, Vanessa Kirker Wright; Wald Law Group, Deborah Wald; and Edward L. Somogyi for Plaintiff and Appellant.

Complex Appellate Litigation Group, Claudia Ribet, Jennifer Teaford; Herring Imming, Gregory W. Herring and Ruston T. Imming for Respondents.